## No. 13,791.

## F. J. DeGravelle vs. The Iberia and St. Mary Drainage District.

### Syllabus.

1. A section of a statute which expressly repeals a particular prior law only effects its repeal to the extent that the provisions of the two acts are contrary to and in conflict with each other, when by the title of the repealing act its scope as to repealing other laws is so limited.

2. The seventh section of Act 114 of 1900 (an act to carry into effect Article 281 of the Constitution of 1898), which declares "that the elections provided for in that act shall be held under the general laws of the State, when not inconsistent with its provisions," is not a repealing and superseding, but an enlarging and assisting section. Its effect was not to supersede the provisions of existing statutes providing for these special elections, but to call in aid of them such provisions of the general election laws of the State as might be needed to cover any point not otherwise provided for.

3. It is not the duty of the courts to examine the proceedings generally of boards of commissioners of drainage districts on sweeping allegations. They will presume them to be legal and regular unless expressly attacked on specific grounds.

4. Drainage districts are established either by direct authority of the General Assembly or by delegated authority to political bodies or subdivisions of the State. The body exercising this authority determines over what territory the benefits are so far diffused as to render it proper for all lands to contribute to the cost of the drainage work. The subject for its determination is legislative in character. The legislative acts cannot be attacked on the ground of error in judgment regarding the special benefits and defeated by satisfying the courts that no special or particular benefits are received unless under very exceptional conditions. They cannot be attacked for impolicy or overthrown by showing that in particular instances they operate harshly or unjustly. Judicial judgment is not to be substituted lightly for legislative judgment. The benefits contemplated need not be direct nor immediate.

A PPEAL from the Twenty-third Judicial District, Parish of St. Mary—*Allen, J.*

*Saunders & Gurley* for Plaintiff, Appellant.

*Foster, Milling & Sanders* for Defendant, Appellee.

### STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. Plaintiff alleged that he was a property owner and tax payer of the Parish of Iberia, his assessment for the year 1900 on real estate being described as: Bounded on the north by Canal street; on the south by Cooper street; east by a line of Hudson and that of Boiler and others; and west by Main street; on which property fronts, insaid parish being eighteen hundred dollars ($1800.00); that the said property was embraced within what is known as the Iberia and St. Mary Drainage District; that the said district was organized under and by virtue of certain pretended authority derived from Act No. 12 of the Acts of the Legislature of Louisiana for the year 1900; that under the said pretended authority a certain drainage district was organized called as above, and commissioners were appointed by the Police Juries of Iberia and St. Mary Parishes, and A. L. Monnot was elected as President thereof; the domicile of the said drainage district being fixed at the town of Jeannerrette, Parish of Iberia, Louisiana.

That the said Board of Commissioners did cause a certain election to be held within the said drainage district, for the purpose of voting for a five mill tax for thirty years, and the issuance of one hundred thousand dollars ($100,000.00) worth of five per cent. interest-bearing bonds, on all property situated within the drainage district, as set forth in the ordinance of the Police Juries reorganizing said district, a copy of which was annexed. That the returns of said election were compiled by the said Board of Commissioners, and that subsequently, to-wit, on the 6th day of October, 1900, the said Board of Commissioners did, by resolution, a certified copy of which was hereto annexed, undertake to levy a five mill tax against all the property within the said drainage district, and to pass a resolution authorizing the issuance of one hundred thousand dollars worth of five per cent. bonds, for the purpose of draining the said district.

That the tax of five mills so levied and the bonds so issued bear upon and affect his property, and operate as an illegal tax and burden against the same. That he annexed hereto copies of all the proceedings had by the old Board of Commissioners of the Iberia and St. Mary Drainage

District, the Police Juries of Iberia and St. Mary Parishes, and of the present board, regarding the organization, all of which he alleged were irregular, null and void.

That the election held on the 9th day of October, 1900, wherein the said tax was pretended to be voted and all proceedings thereunder was illegal, null and void, for the following reasons, among others, to-wit:

1. That Act No. 12 of 1900, and Act No. 5 of the Extra Session of the Legislature of Louisiana of 1899, under which the said election was claimed to have been held, were illegal and were repealed by Act No. 114 of the Acts of the Legislature of Louisiana of the Session of 1900.

2. That the said election was not ordered, held and returned or canvassed in accordance with the general election laws of Louisiana, nor in accordance with the provisions of Act No. 114 of 1900.

That his said property was situated between the Bayou Teche and the public road leading from Franklin to New Iberia, and that his said property, as well as all the other property so situated between said bayou and said public road, was not in any way benefited or improved by the drainage system and work undertaken and contemplated by the said Board of Commissioners, and that hence, the said tax, even if legal in other respects, was illegal, null and void as to his said property, and was an unauthorized attempted exercise of the taxing power by the said commissioners, and that the bonds, if issued, would operate as an incumbrance and burden upon plaintiff's property, thereby causing him irreparable injury. That unless the said Board of Commissioners were enjoined and restrained from enforcing the said tax and issuing the said bonds, they would proceed to do so, to the irreparable injury of plaintiff. That a writ of injunction was necessary to protect his rights in the premises.

In view of the premises he prayed that the Board of Commissioners of the Iberia and St. Mary Drainage District be cited to show cause why it should not issue as prayed for, upon petitioner giving bond as required by law, enjoining and restraining the said board, its officers, agents, servants and employees, from proceeding further to levy or collect the said five mill tax, or issue or negotiate the one hundred thousand dollars' worth of bonds provided for in their resolution of October 16th, 1900, and that after due proceedings, the said tax and bonds be declared illegal, null and void, and the injunction prayed for be made perpetual.

The defendant, after pleading the general issue, alleged that the

Iberia and St. Mary Drainage District existed under and by virtue of Act No. 48 of the Acts of the Legislature of Louisiana of 1900; it reorganized under the provisions of said act. That said act and Act No. 5 of 1899 were not repealed as alleged in plaintiff's petition, but were valid and legal, that the said reorganization was legal, and that the commissioners were legally appointed and qualified; that after said board had become thus reorganized, it, on the 23rd day of August, 1900, by resolution, submitted to the property tax-payers, qualified as electors under the Constitution and laws of Louisiana, the proposition described in plaintiff's petition, which proposition was accepted by a unanimous vote, both in number and amount, of all persons voting at said election; that said election thus ordered, held and returned, was legal, valid and binding on all property tax payers and property situated in said district, and that the matters and claims set up in plaintiff's petition could in no manner affect the validity of said tax, or the bonds to be issued thereunder, and that same were legal and valid under the Constitution and laws of Louisiana. It especially denied that the property described in plaintiff's petition was not benefited by the drainage of said district; but to the contrary, said property was directly benefited, for the reason that to drain the low lands located in that community would increase the commercial value of said property; that all lands situated on the Bayou Teche could be drained in the canal proposed to be cut through said district; thereby preventing the polluting of the waters of the Teche and making them more valuable for commercial and domestic use. That the health of the entire community would be greatly benefited by the purification of the said waters of the Teche, and by the drainage of the low lands and malarial district situated back of the front lands on Bayou Teche, which would be accomplished by the cutting of said canal, and will make said front lands much more desirable and valuable.

The defendant prayed that the injunction be denied; that all the issues herein raised be decided in favor of defendant; and that it, through its president, be authorized to proceed to issue said bonds and to levy and assess said tax. It prayed for all orders necessary and for general and equitable relief.

It was admitted that the returns of the election of the Iberia and St. Mary Drainage District were compiled by the Board of Supervisors of Election of the Parish of St. Mary for that portion of the district situated in the Parish of St. Mary, and by the Board of Supervisors of Elec-

tion in the Parish of Iberia, and that public proclamation was made as required by law and the *proces verbal* of same forwarded to the Secretary of State of Louisiana.

That the promulgation of said election as made by the Drainage Commissioners and also by the Boards of Supervisors of both the Parishes of Iberia and St. Mary, was duly advertised in the official journals of both parishes, for the time ·and in the manner required by law.

It was admitted that the property described in plaintiff's petition was situated between Bayou Teche and the public road leading from the town of Franklin to the town of New Iberia; that said tract of land was from one to three acres in depth, as was a great majority of the lands situated between the said public road and said bayou, as described in plaintiff's petition; that the rain water which falls upon the property described in plaintiff's petition flows into the Bayou Teche; that the front portion, or that portion fronting upon the public road, was higher than that portion which fronts upon the bayou. It was further admitted that in the construction of this canal, all of this water which falls upon said property could be drained into the canal.

The District Court rendered judgment refusing and denying the application for an injunction, and rejecting the demand of the plaintiff, at his costs.

It adjudged and decreed, that the election ordered, and held by the Iberia and St. Mary Drainage District on October 9th, 1900, the tax levied on the property, situated in said drainage district and the bonds issued by said district be, and the same are each and all hereby declared to be legal, binding and valid.

The plaintiff appealed.

## OPINION.

Appellant, F. Degravelle, in a petition to the District Court for the Parish of Iberia, prayed that the Board of Commissioners of the Iberia and St. Mary Drainage District be cited to answer and show cause why an injunction should not issue enjoining it from proceeding further to levy or collect a five mill tax upon the property within that district or to issue or negotiate one hundred thousand dollars of bonds, as provided for in its resolution of October 16th, 1900, and prayed that after due proceedings the said tax and bonds be declared illegal, null and void, and that the injunction prayed for be made perpetual.

The court, after trial, refused and denied the injunction prayed for and rejected plaintiff's demand at his costs.

It further decreed the election ordered and held on October 9th, 1900, the tax levied on the property situated in said drainage district and the bonds issued by said district, each and all to be legal, binding and valid.

He appealed.

In his petition he admitted that his property was situated within the limits of the drainage district, but he averred that from its situation and condition it and all other property situated between Bayou Teche and the public road leading from Franklin to New Iberia, was not in any wise benefited by the drainage system and work undertaken and contemplated by the Board of Commissioners, and that hence the tax, even if legal in other respects, was illegal, null and void as to his property and an unauthorized attempted exercise of the taxing power by the commissioners, and the bonds, if issued, would operate as an encumbrance and burden upon petitioner's property, thereby causing him irreparable injury.

Plaintiff does not call in question the right of the General Assembly or the Police Juries of the Parishes of Iberia and St. Mary to legally have created within the declared limits and boundaries the Iberia and St. Mary Drainage District.

His contention is that notwithstanding his property is situated within the district, it is not subject to taxation.

His prayer, if granted, would leave his property within the district for the purpose of the works of the drainage board, and yet take it substantially out of the taxing district. We do not understand the plaintiff to contend that the judiciary has the power or authority to alter the limits and boundaries of the district. Drainage districts are established either by the direct authority of the General Assembly or by delegated authority to different political subdivisions of the State. The body exercising this authority determines over what territory the benefits are so far diffused as to render it proper for all lands to contribute to the cost of the drainage work. The whole subject of the determination of taxing drainage districts belongs to the Legislature. When the fixing of the district is left for decision to a local board or body, it for that purpose exercises legislative power and its action is as conclusive as if taken by the Legislature itself.

It has been repeatedly decided that the legislative acts assigning districts for special taxation for benefits, can not be attacked on the ground of error in judgment regarding the special benefits, and defeated by satisfying a court that no special or particular benefits are

TERM OF 1900-1901. 709

DeGravelle vs. Iberia and St. Mary Drainage District.

received. That if the Legislature has fixed the district and laid the tax for the reason that in the opinion of the legislative body such district is peculiarly benefited—that is conclusive; that judicial judgment or opinion on that subject is not to be substituted for legislative judgment or opinion (Cooley on Taxation, page 459).

That the question is legislative and conclusions reached on the subject being within the scope of legal power are not unlawful because like all legislative questions the question may have been in some instance or to some extent decided erroneously (Cooley on Taxation, pages 448, 449, 450). Cooley, on page 450 of his work, declares that the only exceptions which have been recognized to this rule are those cases in which under pretense of apportionment, a work of general benefit has been treated as a work of merely local consequence and the cost imposed on some local community in disregard of the general rules which control legislation in matters of taxation.

On page 179 the author further says that "whatever is the rule established by legislation it is presumptively as just and equal in the opinion of the Legislature as the circumstances would permit. It is not to be questioned for impolicy and cannot be overthrown by showing that in particular instances it operates unjustly." In Lockwood vs. St. Louis, 24 Mo. 20 it was said that "it was one peculiarity of assessments that the measure of supposed benefits might be whatever appeared to the Legislature most just under the circumstances."

The question submitted to us is not a new one in Louisiana. It has been repeatedly submitted and answered in the matter of local taxes for levee purposes, the decisions being adverse to the contention made by the appellant. Some of these decisions are referred to in Hill vs. Sheriff, 46 Ann. 1566 and George vs. Sheriff, 45 Ann. 1232.

Cooley, on page 423, says: "The district in this particular instance is a drainage district. The expense of constructing drains in order to relieve swamps, marshes and other low lands of their stagnant water, is usually provided for by special assessments. The grounds on which this is done are not always very clearly indicated in the statutes. Sometimes the ground indicated is that the drainage is important to the public health, and in such cases the right to levy assessments for the purpose can not plausibly be disputed. The special benefits from the enhancement of values must accrue mainly to the owner of the lands drained, who ought therefore to bear the expense:"

But the authority to levy assessments for draining lands upon no

other consideration than such as pertain to the improvement of the land, as property, must, it would seem, be confined within limited bounds. It has been said that a tax cannot be levied upon any portion of the public for the construction of a drain in which the public are not concerned. Even the owner of the land benefited cannot be taxed to improve it unless public considerations are involved, but he must be left to improve it or not, as he may choose. But where any considerable tract of land owned by different persons is in a condition precluding cultivation by reason of excessive moisture which drains would relieve, it may be well said that the public have such an interest in the improvement and the consequent advancement of the general interest of the locality, as will justify the levy of assessments upon the owners for drainage purposes."

"Such a case would seem to stand upon the same solid ground with assessments for levee purposes, which have for their object to protect lands from falling in to a like condition themselves."

We think it unquestionable that the drainage district in this instance was created in the interest of the locality. The tax levied could not be set aside as a whole even if particular properties could, from some particular cause, escape payment of the same.

The claim that plaintiff's particular property is not benefited by the proposed drainage work is not supported by the evidence, and therefore we need not discuss whether it would be specially exempted from taxation, if it was, in fact, not benefited.

We find it admitted that "the rain water which falls upon the property described in plaintiff's petition flows into the Bayou Teche; that the front portion or that portion fronting upon the public road is higher than that portion which fronts upon the bayou;" that "in the construction of this canal that all of this water which falls upon this property could be drained into the canal," that "when the drainage of the district is completed by the Board of Commissioners of the Iberia and St. Mary Drainage District, it will drain and bring into cultivation something near twenty-five thousand acres of land, which otherwise is unfit for cultivation, being covered by water the larger portion of the year, especially in the rainy seasons, and drying out in the very dry seasons; that these lands, when drained, will be as productive as any situated in the district, and that it is the consensus of opinion of the inhabitants of said drainage district, that when said property is drained, and the drainage system is completed, that all lands situated within the limits

of the said drainage district will be increased in value commercially."

"It was further admitted that it is the opinion that the drainage of these low lands as above referred to will materially benefit the health of the inhabitants of the entire drainage district; that after the drainage is completed the sugar refineries situated in said district will then be able to pump the refuse from their refineries into the canal, which will connect directly with the Gulf of Mexico, and thereby the waters of the Teche will be purified and made wholesome; that with the present system of pumping of refuse into the Bayou Teche, the water of said bayou during the rolling season becomes very offensive, emanating a stench that is not only very disagreeable, but is a menace to the health of the community, and interferes with commerce in the bayou. That the polluting of said water with refuse is a crime under the United States statutes and that the proprietors of certain refineries have been indicted and arrested therefor, and that it is a serious problem in some cases to dispose of said refuse."

Plaintiff's contention is that the election held on the 9th of October, 1900, whereat the tax was voted and all proceedings thereunder are illegal, null and void, for the following reasons; among others:

1st. That Act No. 12 of 1900 and Act No. 5 of 1899, under which the said election was claimed to have been held, were illegal and repealed by Act No. 114 of the Acts of the General Assembly of Louisiana of the session of 1900.

2nd. That the said election was not ordered, held, and returned or canvassed in accordance with the general election laws of Louisiana, nor in accordance with the provisions of Act No. 114 of 1900.

We limit the issue raised under these two headings to the objections specifically set up. It is not our duty to examine generally the proceedings of the Drainage Board of Commissioners to ascertain whether they be legal or not. We presume them to be regular and legal unless expressly attacked.

Act No. 114 of 1900 is entitled "an act to authorize any municipal corporations, parishes, or drainage districts (the city of New Orleans excepted) to incur debt, to issue negotiable bonds therefor; to levy special taxes and to provide the manner in which special elections shall be held in such parish, municipality or drainage district for the purpose of incurring debt; issuing negotiable bonds therefor, and levying special taxes for paving and improving streets, roads and alleys; purchasing or constructing a system of water works, sewerage, drainage,

lights, public parks and buildings, bridges, and other works of public improvement the title to which shall rest in the municipal corporations, parish, or drainage district, and to carry into effect Article 281 of the Constitution of 1898 and to repeal all laws in conflict with the same."

The seventh section of the act declares that the special elections provided for in the act "shall be held under the general election laws of the State when not inconsistent with the provisions of the act and at the polling places where the last election in said parish or municipality was held unless the same have been previously changed or additional polling places established."

The ninth section declares that "all laws or parts of laws contrary to or inconsistent with the provisions of the act be and the same are hereby repealed, especially Act No. 5 of the Extra Session of 1899, and that this act take effect from and after its passage."

The matter of the repeal of Act No. 5 of 1899 is not mentioned in the title of Act No. 114 and therefore that act remains unrepealed as is Act No. 12 of 1900, except to the extent that their provisions are "contrary to and in conflict with Act No. 114 of 1900."

Our attention has not been called to any particular portion of Act No. 5 of 1899 or Act No. 12 of 1900, as being contrary to or inconsistent with Act No. 114 of 1900, nor, if there be such inconsistency wherein it is a matter of importance as affecting the questions before us. The objection on this score as made, is not well grounded. We are not informed by the pleadings of any "illegality" either in Act No. 5 of the Extra Session of 1899 or in Act No. 12 of 1900.

Plaintiff urges in general terms that the election at which the tax was levied and all proceedings thereunder were null and void, for the reason that it was not ordered, held, returned, and canvassed in accordance with the general election laws of the State, nor in accordance with the provisions of Act No. 114 of 1900. He does not attempt to specify in what particular there was a departure from the provisions of the Act of 1900, and prior existing laws on the subject of these special elections, nor from the requirements of the general election laws of the State. Section one of Act No. 114 of 1900 declares that the drainage district may incur debt and negotiate negotiable bonds therefor when authorized to do so, by a vote of the majority in number and amount of the property tax-payers, qualified as electors under the Constitution and laws of the State, voting at an election held for that purpose after due notice of said election given by the president of the Police Jury or the Mayor of the municipality."

We do not perceive any inconsistency in the provisions of this section of the act with those of prior laws on the same subject matter.

The declaration made in the seventh section of the act that the elections provided for in the first section should be held under the general election laws of the State when not inconsistent with the provisions of that particular act was not intended to repeal the provisions of prior laws on the subject of these special elections and supersede them by the provisions of the general election laws of the State, but to retain in full force the provisions of existing laws on the subject of special elections and to call in aid of them such provisions of the general election as might be needed to cover any point not already specially covered.

The section in question was not a repealing and superseding section, but an enlarging and assisting one.

We are of the opinion that the judgment of the District Court refusing plaintiff's application and prayer for an injunction and rejecting his demand as based upon the reasons assigned by him, was correct. No action is alleged to have been taken by the defendant board towards incurring a debt or issuing bonds under the authority conferred upon them through the election held on the 9th of October, 1900.

We do not consider that the legality or illegality of any action taken by the defendant board *under authority of that election* is an issue in this case. As so explained and understood the judgment of the District Court is hereby affirmed.