BREAUX, C. J.
This is a suit by plaintiffs to expropriate the lands of defendants fronting on the Mississippi river at Second street, in the city of New Orleans.
The lot plaintiffs seek to expropriate is described as a portion of ground in the Fourth District, bounded by First, Second, Water,- and Tchoupitoulas streets, and measuring 132 feet 4 inches front on Water street, or line of the levee, same front on Tchoupitoulas street, and 123 feet 8 inches 4 lines front on First street.
Plaintiffs, it is well known, have charge of the levees, and to them is intrusted the duty of repairing levees, and of building others whenever it becomes necessary.
They, it seems, have examined into the necessity of adding to the defense from overflow at a point deemed weak. During the last high water a break was apprehended at this place. They propose to add to the strength of the levee. Plaintiffs urge to that end that the land in question is necessary, and they ask for its expropriation.
There are three suits by plaintiffs, which have been consolidated into one by agreement of counsel.
One of the defendants, Mrs. Brittin, owns part of the land which plaintiffs seek to expropriate. She denies that her property is necessary for levee purposes in order to protect the city from inundation, as claimed by plaintiffs, and she avers that the levee in front of her property can be repaired or rebuilt without taking her property; that in any event, the space demanded exceeds that which is necessary for the purposes intended by the board.
She alleges further, if, despite her opposition, plaintiffs should succeed in obtaining judgment expropriating her land, then she asks judgment for its value. The other defendant’s defense is substantially the same.
The lessee of the property, Douglas M. Kilpatrick, made a defendant, claims that his loss will be, should he be ousted from his lease, at least $3,000, for which he prays judgment.
The judgment appealed from allows Mrs. Brittin the sum of $10,937.50, and costs of suit, and defendant is condemned to make title to plaintiff of the property described.
In another judgment the estate of James Jackson is allowed the sum of $6,562.50 and costs, and defendant is also condemned to make title to the property described. To the lessee, D. M. Kilpatrick, $1,500 is allowed.
These are the issues presented by the *127 pleadings. A number of witnesses were examined, maps were introduced in evidence, and a number of questions were raised in tbe course of the trial.
One of the most important of these questions grows out of the extent of the authority of the board to determine in regard to the location of levees and how they should be constructed. As made evident by our synopsis of the answer, defendants challenged the right of plaintiffs to locate the levees as they proposed, and they charge that the expropriation of their property was unnecessary.
Unquestionably the commissioners, when acting within the discretion with which they are intrusted, should not be interfered with. They under the requirement of the statute, are advised by the Board of Engineers of the state, and the presumption is that the new work, approved by the Board of Engineers, and the methods recommended for its accomplishment, are about as near correct as any approval or recommendation can be.
This view does not exclude the idea that all testimony should be excluded. Gross error may be shown, or any arbitrary act on the part of the board. There was testimony admitted and testimony excluded. Sufficient was admitted to enable us to decide whether or not the expropriation complained of was grossly erroneous and an act of malfeasance.
It does not fall within the category last mentioned, and if we were to remand the case to admit further testimony, and to enlarge the scope of the inquiry heretofore followed, we are confident that it would not result in arriving at a different conclusion than that heretofore found.
The experience of trained engineers has been called into service. The statutes creating the plaintiff board, and directing how it should lay out the work and improvements to be done, with clearness and directness state that the approval of the State Board of Engineers is to be obtained before levee work is performed. The courts should be slow in | substituting their judgment to that of those who have made a study of the Mississippi, its waters, and its inundation, which prepares them for the duties with which they are intrusted.
None the less we must say their plans and specifications are not hedged around with any authority which should prevent examination into the work and improvement they propose, although public safety requires that they should not lightly be interfered with.
This was the trend of the decision in Peart & Husband v. Prest. Levee District, 45 La. Ann. 421, 12 South. 490.
Similar and strong views in the same direction were pronounced in Brennan v. Sewerage Co., 108 La. 583, 32 South. 563.
We do not think that they (the plaintiffs) have exceeded their power in the premises. We have no reason to find that gross error has been committed, and nothing need be said about fraud, for it is neither alleged nor intimated.
True, as contended by defendants, that private property cannot be expropriated for public purposes unless it is shown necessary. It is also true that defendants in an expropriation suit may set up and show that the land demanded exceeds the quantity needful for the work.
It remains the state in her sovereign capacity has selected as agents engineers, skilled in their profession, to determine upon plans and specifications. We would scarcely be justified in condemning these plans and specifications unless it was evident that they were all wrong, and that they invaded private rights in contravention of all law and justice. We have not arrived at that point in the decision of this case, and we, therefore, will have to let things remain as they are as relates to these plans and specifications, for, as before stated, the testimony admitted to prove that they are erroneous has not sustained the defense.
Defendants seek to establish inconsisten *129 cies of opinion in the approval of the State Board of Engineers réported to the plaintiff board. There are expressions contained in a communication of these officers to the State Board which certainly have the appearance of being more favorable to the defendants’ cause than is the regular report made conveying official approval in regard to the contemplated expropriation. In the communication in question (that dated the 28th September, 1902) the Board of Engineers was of opinion that defendant’s warehouse might be permitted to remain on the terrace, which it is proposed to construct in order to strengthen the levees, without in any manner weakening the levee or rendering it less secure. It seems that that idea was abandoned entirely. Something in regard to the extent of the expropriation may have been changed, but this is not cause enough to set aside their approval as ill advised. It may be that it was admissible to make the change. Changes are sometimes advisable to accommodate the enterprise to other circumstances than those which were considered when the communication was written.
We have read as carefully as we could the testimony relating to this communication, and the explanation given by the members of the board as to it, and have found no reason to infer that wrong was intended, or that error was committed, that is made evident by this communication.
The area demanded, another of defendant’s contentions, presents another question. Is the space demanded unreasonably large? Engineers who are members of the State Board of Engineers, and others who are not members, testified that it is entirely within the limit of the necessary, in view of the fact that it is intended to construct a safe levee.
Here, again, we would scarcely be justified in substituting our judgment to that of these engineers. Large interests are intrusted to these boards. They have a discretion, and of this discretion it has been said that it should not be lightly set aside. Am. & Eng. Ency. of Law (2d Ed.) vol. 20, p. 239, and notes.
If it were evident that the purpose was anything other than levee protection, then it would be proper for us to curtail the area, for the duty of plaintiffs is one due to the public only in matter of levees and protection from inundation. Witnesses connected with plaintiff board disavow all idea of extending the work of building or repairing levees any further than necessary for protection .from inundation. We must decline to reverse a finding, sustaining the board’s action in this respect, returned by a jury composed of citizens having knowledge of the subject.
We might dwell further upon the details of the case. This we will not do, for we are confident that it would only be to return to the conclusion before expressed, for the testimony all leads to this one conclusion.
This brings us to the question of the value of the property plaintiffs seek to expropriate..
The verdict of the jury as relates to -valuó has not in this instance the weight that it originally had.
The following excerpts from the written opinion of the learned judge of the district court, on rule for new trial, sets forth that:
“On the question of value, all the evidence is in the record. The weight of the testimony, perhaps, would indicate a higher valuation than that fixed by the jury, but this issue also will go to the Supreme Court. It seems to me that the amount awarded to the lessees may be under estimate of his damage; but while I have doubts, this was an issue of fact, and the jury passed upon it.” (Italics ours.)
The learned judge heard the witnesses, saw their manner of testifying, and had opportunity at first hand of determining in regard to the weight of the testimony as relates to the value of the property.
There must be reasonable compensation *131 made for lands expropriated. This is a requirement of the organic law. Compensation is in accordance with the intention of the government on that particular subject.
The value of the property testified to by the witnesses varies from a very small amount to a considerable sum. We shall endeavor to avoid both extremes, the high and the low, testified to by the witnesses of the respective parties. Upon an average basis we find that $22,500 would be the value.
Upon a basis of the rental of the property, the value would be near the same.
The lessee’s amount, as laid down in the judgment, will remain unchanged.
For reasons assigned, the law and the evidence being with defendants, the amount allowed heretofore is increased to $22,500, and said board, instead of the amount of the verdict, is condemned to pay unto the owner, Mrs. Emma Louise Brittin, the sum of $14,062.50, and to the estate of James Jackson the sum of $8,437.50.
As amended, the judgment is affirmed.