(58 South. 493.)

No. 18,593.

BERNARD et al. v. BAYOU PORTAGE DRAINAGE DIST. et al.

(March 25, 1912.    Rehearing Denied April 22, 1912.)

*(Syllabus by the Court.)*

1. DRAINS (§ 14*)—DRAINAGE DISTRICT—ESTABLISHMENT.

The matter of the creation and delimitation of drainage districts is entirely within the discretion of the police jury of the parish where such districts may be created, and when the police jury of a particular parish adopts an ordinance, the declared purpose of which is to create and delimit a drainage district within the parish, it acts within its powers, and the motive of such action will not be inquired into by the courts, save upon allegations of fraud or manifest invasion of private rights.

[Ed. Note.—For other cases, see Drains, Cent. Dig. §§ 5, 6; Dec. Dig. § 14.*]

2. DRAINS (§ 43*)—DRAINAGE DISTRICT—TAX LEVY—USE.

Where a special tax is levied for the construction of a navigable canal as a permanent public improvement, and a special tax is also levied for the drainage of the district through which the navigable canal is projected, the fact that the authorities in charge of the respective enterprises may contemplate an arrangement whereby such canal may be made to serve both their purposes involves no invasion of private right, nor unauthorized exercise of power, so long as neither makes use of the tax levied for one of the purposes for the accomplishment of the other.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 55; Dec. Dig. § 43.*]

3. DRAINS (§ 15*)—DRAINAGE DISTRICT—TERRITORY INCLUDED—MUNICIPALITY.

A municipal corporation, not under the dominion of Act No. 136 of 1898, may so amend its charter as to authorize the police jury of the parish to include its territory within a drainage district.

[Ed. Note.—For other cases, see Drains, Cent. Dig. §§ 7–10; Dec. Dig. § 15.*]

4. DRAINS (§ 66*)—DRAINAGE COMMISSIONERS—APPOINTMENT.

The law, as it existed in 1909, required that three members of the board of commissioners of a drainage district should be appointed by the police jury of the parish in which such district was established, upon the petition and recommendation of property taxpayers, which petition was required to set forth the assessed value of the property owned by each of the petitioners and be attested by the parish assessor; and where a petition, not so attested, was prepared and signed, recommending three persons for appointment, and it was subsequently ascertained that one of the persons was ineligible, and another name was substituted for his, without the knowledge or consent of the signers of the petition, the action of the police jury in appointing such persons, including the one whose name was thus substituted, was unauthorized, the appointments were null, the board was never legally created, and its subsequent acts were void.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 72; Dec. Dig. § 66.*]

5. DRAINS (§ 67*) — DISTRICTS — ELECTION — STATUTES.

The statute (Act No. 145 of 1902) regulating elections held under article 281 of the Constitution does not require a secret ballot, and the act (No. 317 of 1908) amending section 27 of that statute so as to make its provisions applicable to acreage tax elections is not unconstitutional.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 73; Dec. Dig. § 67.*]

6. DRAINS (§ 78*)—DRAINAGE DISTRICT—RURAL AND URBAN PROPERTY—TAXATION.

Drainage districts may be wholly rural or partly rural and partly urban, and, as the law no more limits the power of partly urban districts to ad valorem taxation than it limits wholly rural districts to specific acreage taxation, the courts are without authority to impose such limitations.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 78.*]

Appeal from Nineteenth Judicial District Court, Parish of St. Martin; James Simon, Judge.

Suit by Dumas Bernard and others against Bayou Portage Drainage District and others to set aside an acreage tax levied to pay the expenses of a drainage district. Judgment for defendants, and plaintiffs appeal. Reversed, and judgment rendered for plaintiffs.

L. T. Dulaney, Felix Voorhies, Dan W. Voorhies, and Albert Voorhies, for appellants. Martin & Martin and F. E. Delahoussaye, for appellees.

### Statement of the Case.

MONROE, J. The police jury of the parish of St. Martin having established what is called "Bayou Portage Drainage District," including therein a portion of the town of

St. Martinville, and commissioners having been appointed and having organized themselves as a board, and the board having ordered an election to take the sense of the property taxpayers upon the question of levying, or not levying, an acreage tax for the drainage of the district, and having promulgated the result and levied the tax, the plaintiffs herein, who are property taxpayers of said district, bring this suit, attacking the proceedings leading to the result thus stated, praying that they be decreed null, and that the collection of said tax be perpetually enjoined. The defendants—board of commissioners, assessor, and tax collector—filed certain exceptions, which are not insisted upon, after which they answered, affirming the validity of the proceedings in question, and, as against some of the plaintiffs, pleading an estoppel, resulting, as they allege, from the fact that said plaintiffs were among those who petitioned for the establishment of the drainage district and the levying of the tax. The grounds relied on by plaintiffs are numerous, are set forth at length, and are, in substance, as follows:

That the purpose of the police jury in establishing Bayou Portage drainage district is to combine the proceeds of the drainage tax, to be levied by the board of commissioners, with certain special taxes which have been levied by, and in the interest of, the town of St. Martinville, for the use and benefit of a canal, to be constructed for purposes of navigation, between said town and Bayou Portage, which canal the town is promoting in order to extend its trade, and in which the plaintiffs, who, for the most part, have their holdings in the third ward, a rural district, have no interest. That the attempted amendment of the town charter whereby the police jury was given jurisdiction, for drainage purposes, within the limits of the town, was unauthorized by law. That the appointments of the members of the board of commissioners of the drainage district, attempted to be created, were not made as required by law, and were and are void. That the ordinance calling the election for the purpose of obtaining the sense of the property taxpayers on the proposed acreage tax, for drainage purposes, and the ordinance levying the tax, are ambiguous, in that they refer to a tax, or contribution, of "15 cents an acre, for 15 years, beginning with the year 1909, and up to, and including, the year 1924," thus stating the term to be 15 years, and yet providing for the levy during a period of 16 years. That there was no law authorizing the calling of an election upon the subject of an acreage tax; such taxation being prohibited by article 281 of the Constitution, as originally enacted, and the amendments thereto not being self-operative, and there being no enabling legislation. That the acreage tax is a rural tax, to be imposed upon acres of land, and not upon town lots.

## Opinion.

[1, 2] 1. The matter of the creation and delimitation of drainage districts, within the parish, was entirely within the discretion of the police jury, and the declared purpose of the ordinance enacted by it, for the creation and delimitation of the district in question, having been the legitimate and lawful one of draining the lands in the district so created, and the police jury having acted within its powers, the courts are without authority to impugn or inquire into its motive, unless fraud or manifest invasion of private right were alleged and proved. Act No. 159 of 1902, p. 293; Act No. 135 of 1906, p. 225; De Gravelle v. New Iberia, etc., 104 La. 703, 29 South. 302; Board v. Wilkins Co., 125 La. 134, 51 South. 91; Taxpayers v. Sewerage & Water Board, 108 La. 583, 32 South. 563; Board v. Jackson's Estate, 113 La. 124, 36 South. 912; Dupuy. v. Police Jury, 115 La. 579, 39 South. 627; Murphy v. Police Jury, 118 La.

410, 42 South. 979. There is no fraud alleged here, and no invasion of private right proved. We deduce from the evidence that the people of St. Martinville, represented by their progressive league and town council, conceived the idea, which was concurred in by the police jury and the drainage commissioners, that the drainage scheme and the navigable canal scheme might in some way be worked out together, to the advantage of both, and we find no reason to doubt that the idea was conceived in good faith and with the intention to keep within the law; the argument, on the one side, being that the proposed navigable canal, though intended to be deeper and wider and more expensive than would be required for drainage, would materially aid in the accomplishment of that purpose; and, on the other side, that to a certain depth and width a canal, where the proposed navigable canal was projected, would be essential to the scheme of drainage, and that, if the cost to that point only were paid from the proceeds of the drainage tax, it could afford no just ground of complaint, if such canal were deepened and widened by the use of the proceeds of the navigable canal tax, since the drainage district would thereby get more than it was paying for. The drainage commissioners testify that they were fully advised that the proceeds of the drainage tax could not lawfully be used for the purposes of the navigable canal, and that it was never their intention to use them for any other purpose than drainage; and so long as they hold fast to that view, and do not part with the control of, or tie up, the work of public improvement which has been intrusted to them, they will be on safe ground.

[3] 2. St. Martinville is an old town, which does not appear to have come under the provisions of Act No. 136 of 1898, and its method of amending its charter was in strict accordance with section 43 of that act, applying to such corporations. The effect of the amendment was to authorize the police jury of the parish to incorporate the territory of the town in a drainage district, partly rural and partly urban. Act No. 159 of 1902, § 10.

[4] 3. The members of the board of drainage commissioners were not appointed in accordance with law. The board was therefore never legally established, and hence its supposed official acts were void. Section 2 of Act No. 159 of 1902 provides that there shall be five commissioners for each district, three to be appointed by the police juries (save as otherwise provided in the act) and two by the Governor; and, further, as follows:

"When the appointment is to be in a district containing less than forty property owners, the appointment shall be made upon the recommendation of a majority, in number and amount, of such property owners; but, when the district is composed of more than forty property owners, then, the appointment shall be made upon the recommendation of not less than twenty-five of the property owners of such district and the petition making the recommendation shall state the amount of property owned by each petitioner, and the same shall be attested by the parish assessor."

See, also, Act No. 135 of 1906, § 2, p. 226.

In the present instance, there was a petition prepared and signed by the requisite number of property owners, with figures set opposite their names purporting to indicate the amount for which they were assessed, recommending the appointment by the police jury of John Durand, Gilbert J. Durand, and Scott Kelso; but it was not attested by the assessor, and some 10 or 12 days later, after it had been signed by probably all of the petitioners, it was ascertained that John Durand was ineligible, because he had not paid his poll tax, whereupon, and with the consent of the two Durands, the name of Leonce Durand was substituted in place of the name of John Durand, but it does not appear that the change was made with the knowledge

or consent of the petitioners. Of the three commissioners appointed by the police jury, therefore, one of them is not shown to have been recommended for appointment as the law requires, and it seems pretty certain that he was not recommended, as he himself testifies that he was spoken to upon the subject of the change some 10 or 12 days after he and others had signed the petition recommending John Durand, and that, upon his hesitating about allowing his name to be substituted, he was urged to consent at once, as it was desired to get the petition at once before the police jury. Mr. Labbe, secretary of the board, and a witness for the defense, gives the following, with other, testimony on that subject:

"I was one of the parties that first went to Mr. Durand. He accepted, and we found, after, that he was unable to serve because his poll tax was not paid. I went back to Mr. Durand and stated the fact to him, and asked him if his son suited him instead of himself. He said, 'Yes.' One afternoon, I went to Leonce Durand and requested him to serve in the place of his father. He accepted. I remember the instance very well, because we were in a hurry to present the petition and we had to decide the matter immediately."

4. The ambiguity in the ordinances ordering the election and levying the tax is, of course, objectionable, but would not, in itself, vitiate the proceedings, being rather apparent than real.

[5] 5. The law regulating elections held under article 281 of the Constitution does not require a secret ballot. The first law enacted to carry that article into effect was Act No. 5 of 1899 (E. S.), which specifically provided the manner in which the elections should be held. That act was amended and re-enacted by Act No. 145 of 1902. Up to 1906, article 281 contained no provision as to acreage taxes, and such provision was incorporated in the amendment proposed by Act No. 122 of 1906, and also in that proposed by Act No. 300 of 1908, p. 450. This last-mentioned amendment also contained a pro-

vision (section 2) that it should take effect immediately upon its adoption. Act No. 317 of the same session (1908), p. 485, purports to amend and re-enact section 27 of Act No. 145 of 1902, which relates exclusively to the powers of the commissioners and clerks of election. As amended and re-enacted, the section additionally declares: (1) That the provisions of the act (No. 145 of 1902) restricting the total rate of taxation to be imposed through elections therein provided for shall not apply to acreage tax elections; and (2) that the manner of holding drainage tax elections as provided by the act "is hereby fixed as the method of holding" acreage tax elections. Plaintiffs assail the constitutionality of the last-mentioned addition, on the ground that it was not germane to the subject dealt with in the section amended. The attack, we think, is not well founded, and would not accomplish its purpose, if it were. That is to say, Act No. 145 of 1902 provided for elections to be held under article 281 of the Constitution, and there was nothing in the amendments of 1906 and 1908, adding acreage tax elections to those already provided for, which required any new legislation; but, if such new legislation had been required, it might properly have been adopted, as it was adopted, by way of amendment to section 27 of the act in question, which is one of the sections regulating the manner of holding the elections already provided for.

[6] 6. The term "acreage tax," no doubt, conveys the idea of a tax imposed upon rural property, which is measured by the acre, rather than upon urban property, which is usually measured by the lineal, or square, foot. But the law provides for the establishment of drainage districts, which may be wholly rural, or partly rural and partly urban. It also provides that such districts may levy either ad valorem or acreage taxes, and it no more limits the power of the partly urban district to ad valorem taxation than

it limits the power of the wholly rural district to specific acreage taxation. Whether it would have been wiser to have imposed such limitations, it is not the province of the courts to determine. If it should be so considered, the matter will, no doubt, receive the attention of the lawmaking department of the government.

For the reason that the members of the board of commissioners of Bayou Portage drainage district were not appointed under the conditions prescribed by law; that the board was therefore never legally organized; and hence that its supposed official action was without legal effect:

It is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of the plaintiffs, annulling and avoiding all the proceedings here complained of, from the appointment by the police jury of the members of the board of drainage commissioners to the extending upon the assessment rolls of the acreage tax, or forced contribution, levied by said board, inclusive. It is further decreed that the preliminary injunction herein issued be now made perpetual and that the defendants pay all costs.