Statement of Case.
MONROE, J.
Plaintiff brings suit to expropriate a right of way for its railroad from east to west through defendant’s (“Bellemont”) plantation, near Opelousas, and defendant answers, admitting the necessity of traversing the plantation, but alleging that it is unnecessary to build the road on the particular line selected, and insisting that it be built upon a line a few hundred yards farther to the north. He alleges that, if the right of way be expropriated as proposed, he should be allowed $22,604.77, of which $2,272.30 represents the value of the land actually taken, and the balance is made up of various items of damage claimed by him.
There was a trial resulting in a verdict reading as follows:
“We, the jury, find that plaintiff is entitled to the line of its railroad as claimed in its petition. And defendant is entitled: (1) for value of land expropriated, $1,100; (2) for all other damages suffered, separately from land expropriated, $1,259.40; (3) for inconvenience that will be suffered, $700. Further, plaintiff company must install all necessary crossings, culverts and cattle guards.”
Which verdict having been made the judgment of the court, defendant has appealed, (the judgment having, in the meanwhile, been executed, as authorized by the statute), and plaintiff answers the appeal, praying that the items $1,259.40 and $700 be disallowed.
Opinion.
It appears from the evidence adduced on the trial that, in the fall of 1905, plaintiff and another railroad company were seeking to get into Opelousas, and that both companies were granted the right to enter by way of Convent street, which traverses the northern section of the town, from east to west, and is about 40 feet wide. Plaintiff, then, with a view to the extension of its road to, and beyond, Bayou Teche, caused a survey to be made of a route extending eastward, from the end of Convent street, through the adjacent property and the plantation of the plaintiff, which latter lies not far from the town limits. Subsequently, in January, 1906, because Convent street was scarcely wide enough to accommodate two roads, because the plaintiff’s road had been located on the north side of the street, whilst the business part of the town lies to the south, and possibly for other reasons, the town council granted plaintiff the right to enter by way of Chaney street, which, running parallel with Convent street, lies some hundreds, or perhaps 1,000, feet to the south of it; and plaintiff appears, thereupon, to have prosecuted the work of acquiring the right of way to the eastward with reference to that fact, and so far succeeded that it had acquired such right between the town limits and the western boundary of defendant’s plantation, and between the eastern boundary of said plantation and the Teche (save as to a few small places), when it met with an objection from defendant, who preferred that it should adhere to the route originally surveyed, and refused to consent to the adoption of the other route, save on payment of $5,000.
We may dispose of the first objection urged by defendant by saying that the evidence fails, utterly, to show that the route here in question was selected with any wanton purpose to inflict injury, whether upon defendant or any one else, and, upon the other hand, makes it clear that such route was selected in perfect good faith, and because it is the best and most desirable from an engineering point of view and when considered with reference to the general course *271 of the road and to the right of way already acquired. Under such circumstances, the right of selection vested in the expropriating corporation will not be subjected to judicial control. Cyc. vol. 15, p. 634; Thibodeaux v. Maggioli, 4 La. Ann. 73. As may be inferred from the fact that defendant was willing to accept $5,000 as compensation for the value of the land to be -taken and for all damages, the present claim for $22,604.77, is greatly exaggerated.
It is, however, just to defendant, to say that he offers, in his petition, to grant the right of way, by the northern route, for $1,057, and, whilst on the stand as a witness, expressed himself as willing that plaintiff should have it without charge rather than that the route selected should be finally adopted. I-Ie complains that the southern route cuts off the major part of the open land from the plantation buildings but, from the map which his counsel have produced, there appears to be about as much open land to the north of the proposed route as to the south, and, whether the road be built upon the one route or the other, it -is quite certain that there must be large bodies of land of that kind on both sides, and that, so long as the 2,500 or 3,000 acres now owned by defendant are held together, as one plantation, the owners must reconcile themselves to, and may, perhaps, congratulate themselves upon the idea that they have a railroad running through it. We say that the owners may, perhaps, congratulate themselves, because in reading some'of the testimony, to the effect that, in times past, they have had to haul their cotton for 25 miles, we cannot disabuse our minds of the impression that a railroad station nearer at hand might not be an unqualified evil. Defendant complains that there will be “cuts” and “fills” on the proposed route which will render the crossing of the road inconvenient, but the evi- ■ dence shows that the average depth and height of the “cuts” and “fills” would be about the same by the one route as the other, and that such plantation roads, running north and south, as are needed, can, with no great inconvenience, be arranged to cross the railroad at points where no grading is needed. There are many items of alleged prospective damage to particular tracts of land; in one instance amounting, it is said, to the total loss of a tract of 6.94 acres, valued at $100 an acre, in others to a depreciation of 50 per cent., and, in one case, to a depreciation to the extent of 15 per cent., in the value of 997 acres, of which 114 acres is woodland, and all of which is valued at $100 an acre, though defendant bought it, a little more than two years before this suit was filed, for less than $40 an acre. It was stated by defendant’s counsel in the argument that the jury by which the case was tried were farmers, and, as they live in the parish and are necessarily the owners of real estate, and probably of farms and plantations, it seems to us that they were particularly well qualified to deal with the question presented and very unlikely to have done any injustice to the defendant. At all events, our reading of the record has not convinced us that they have erred in that direction. On the other hand, whilst we are inclined to think that they have been liberal, we are not prepared to say that their assessment of values is exorbitant or unconscionable. When the property of a citizen is taken without his consent for a purpose which though quasi public, is predicated, in the main, upon considerations of private profit, he ought to be paid its full value.
Judgment affirmed.