158 So. 363

CITY OF NEW ORLEANS, by and through PUBLIC BELT RAILROAD COMMISSION FOR CITY OF NEW ORLEANS, v. ATKINSON.

No. 33038.

Nov. 26, 1934.

Rehearing Denied Jan. 7, 1935.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellant.

John E. Fleury and Frank H. Langridge, both of Gretna, for appellee.

ODOM, Justice.

This is an expropriation proceeding brought by plaintiff to acquire title to a triangular piece of land owned by defendant situated in Jefferson parish at Southport, on the left bank of the Mississippi river.

Defendant owns a narrow tract of land, 8½ acres, trapezoidal in shape, the long side of which is a line running from the right of way of the Illinois Central Railroad north 25° 50′ east to the southern boundary line of the Jefferson Highway, a distance of 2,258 feet. This line forms the eastern boundary line of the tract, its north boundary line being the south line of the right of way of the Jefferson Highway. It has a frontage on the highway of 271.2 feet. The plaintiff intends to build a double-track railroad along the eastern edge of defendant's property. From the Illinois Central Railroad, its track will run straight along the edge of the defendant's property until it reaches a point 459 feet from the highway, where it curves slightly toward the west and runs across the northeast corner of defendant's property, cutting off a small triangle which has an area of 1,166 square feet, or about one-third of an acre. One side of this triangle is a line running from the northeast corner of the defendant's property in a westerly direction along the south line of the highway a distance of 109.59 feet. Another side of the triangle is a line running in a southerly direction from the northeast corner of the property along its eastern line a

distance of 459.41 feet. The other side of the triangle is a curved line 441.64 feet long. So that this one-third of an acre of defendant's property which plaintiff seeks to acquire is triangular in shape and cuts off 109.59 feet of defendant's frontage on the highway, leaving a frontage thereon of 271.2 less 109.59, or 161.41 feet.

The jury assessed the value of this land at $15,000 and fixed the damage to the remaining property at $10,000. The plaintiff appealed from these awards as being grossly excessive. The defendant answered the appeal, praying that the amount of damage be increased from $10,000 to $50,000.

The only controversy now between plaintiff and defendant is the amount of the awards. Plaintiff called five expert witnesses, each engaged in the real estate business in New Orleans and surrounding territory, to value land taken and the damage, if any, to the remaining property resulting from the taking and the use which plaintiff proposes to make of the land taken. These witnesses were Mr. Onorato, Mr. Rennyson, Mr. Crump, Mr. Deano, and Mr. Tessier. The defendant's expert was Mr. Hyman. These are all men of wide experience in the real estate business, and so far as the record discloses, have no personal interest in the outcome of this case.

Mr. Onorato said the land taken was worth $4,000; Mr. Rennyson and Mr. Deano each said it was worth $3,000; Mr. Crump valued it at $3,233, and Mr. Tessier at $3,500. Each of these witnesses testified that the cutting of this small triangular piece of land of one-third of an acre off from the main tract of 8½ acres and the use of it for the purpose contemplated would result in no damage to

the remaining tract. Mr. Hyman, the expert called by defendant, said the land taken was worth $10,000 and that the remaining tract would be greatly damaged by cutting off this triangle and by the use of it for a railroad right of way.

The jurors visited the property and, as said, valued it at $15,000. Just what basis they used in arriving at this valuation is not shown. Certain it is that they ignored all the expert testimony, even that of defendant's own expert, who said it was worth only $10,000.

█ In expropriation proceedings, the jurors, who are residents of the vicinity in which the property is situated, are presumed to possess some personal knowledge of property values and are clothed to some extent with the character and authority of experts. They may exercise, in part at least, their independent judgment in fixing the value of the property to be taken. Their verdicts as to the value of the property to be taken are entitled to respect and have some weight with the court. But their verdicts are subject to review and will be amended where manifestly erroneous. City of Shreveport v. Herndon, 173 La. 144, 136 So. 297, and numerous cases there cited.

The jurors are not at liberty, however, to ignore altogether the sworn testimony of the experts. In City of Shreveport v. Youree, 114 La. 182, 38 So. 135, 136, 3 Ann. Cas. 300, this court, after quoting the "formula" laid down in Postal Tel. Cable Co. v. Railroad Co., 43 La. Ann. 522, 525, 9 So. 119, and repeated in many subsequent cases, said:

"It is noted that under this formula the jury are not at liberty to 'disregard' the tes-

timony, but that 'they are authorized to rely on their own opinions, as well as on the testimony adduced before them.' It leaves them free to consult whatever knowledge they may possess outside of the testimony, and also free to consult their own judgment, and at the same time holds them down to the duty, under their oaths, of giving due weight to the testimony. Far from being authorized to disregard the testimony, they are held bound by it so long as it has not been discredited."

This language was quoted with approval as late as the case of City of Shreveport v. Herndon, supra.

In the present case the valuation placed by the jury upon the property to be taken is grossly excessive. It is not supported by any testimony in the record. On the contrary, all the testimony shows that the property has no great value.

Defendant's tract of 8½ acres, from which plaintiff is attempting to take one-third of an acre, is not situated in a commercial district and is valuable only for factory or industrial sites, and defendant himself testified that no part of the main tract is presently on the market for such sites, it being needed for the plant now located upon it. If there is any demand at the present time for factory or industrial sites in the vicinity of this property, the record fails to show it. The testimony shows that neither defendant's tract nor any other adjacent to it or in that vicinity ever had a valuation exceeding $3,500 per acre. In the so-called "boom days" of 1929, when real estate values were at their highest, defendant purchased the 8½ acres for $28,500, or approximately $3,500 per acre. All the testimony shows that since then there has been an enormous shrinkage in values in that vicinity and elsewhere.

While, as stated, this property is not in a commercial district, it is true that it has a frontage of 271.2 feet on the Jefferson Highway, a much-traveled paved thoroughfare leading out of the city of New Orleans in a general westerly direction. Near to this highway there are one or two amusement resorts which are visited by people from the city and from elsewhere, and along the paved portion of the road there are filling stations, sandwich and cold-drink stands, and the like, such as are usually found on highways, and especially near to cities. There are, however, not many of these in this immediate vicinity. The record does not disclose what the owners paid for such sites, and for that reason the witnesses and the jurors had no precedent to guide them in fixing the value of this lot.

But the record does show that just prior to institution of this proceeding, plaintiff acquired from Peter Cooney a lot on the opposite side of the road for $20,000, which lot has a frontage on the road of 125 feet and runs back 135 feet. There were on this lot at the time acquired buildings and improvements worth $5,500. This lot, with all its improvements, was appraised by some of the same experts who testified for plaintiff, at $20,000, and it is argued by counsel for defendant that they must have considered the lot alone worth $14,500, and they say that if the Cooney lot was worth that much there is no reason why the lot on the opposite side of the road taken from defendant should be appraised for less.

But there are numerous reasons why the experts valued the Cooney property at $20,-

000 and why his lot alone was much more valuable than the lot to be taken from defendant.

At the time Cooney sold, he was engaged in the oil and gas business, operating a filling station, carrying such stock as is usually found at such places. He had on the lot all the buildings and equipment necessary for such purposes. His buildings, valued at $5,500, were a total loss to him. It was necessary for him to move to another location on the road further out, and while he did not lose his equipment, he had to detach and move it. It was necessary for him to build and equip another oil station, which took about 90 days, during which time he was out of business. The appraisers took all this into consideration.

As to the values of the two lots, it is said by all the witnesses that the lot involved is less valuable than the Cooney lot. Defendant's expert, Hyman, said it was worth 30 per cent. less. The other experts said it is worth much less and they explain why. One reason they say is that the Cooney lot is on the right-hand side of the highway going out and the other lot is on the left of the road. They say that motorists leaving the city usually buy gasoline and oil as they go out, and, as they drive on the right-hand side of the road, it is more convenient to turn into a filling station on that side, whereas if the station is on the left-hand side, it is necessary to cross the road and the line of traffic. Oil companies, they say, in the market for filling station sites, always want them on the right-hand side of the road, especially near large cities. The testimony shows that there are oil stations on the left of this road, but they are further out. Another reason for the difference in values is that the level of defendant's property is from 3 to 4 feet below that of the road and, to make the lot involved valuable for any commercial purpose, the grade would have to be raised at a cost of $2,000 to $2,500. The Cooney property has been filled in and graded up to the level of the road. Another thing is that the lot to be taken has a frontage of only 109.59 feet, whereas the Cooney property is 125 feet wide.

Another feature, and a very pertinent one, is that whereas the right of way of the Jefferson Highway is approximately 100 feet wide, only a strip of it 25 or 30 feet wide has been paved, and that strip is on the right-hand side going out, so that the Cooney lot runs up to the pavement. On the other hand, defendant's property is 75 feet from the pavement. This is a serious disadvantage and one which any prospective purchaser would consider.

The lowest valuation placed on this lot by any of plaintiff's experts is $3,000 and the highest is $4,000. The average is $3,346. Mr. Hyman, defendant's expert, valued it at $10,000. Taking the testimony as a whole, we think a valuation of $4,000 is reasonable and should be adopted.

The cutting of this triangular lot off the front of defendant's main tract will unquestionably damage it some, but not to the extent claimed by him. His frontage on the highway is decreased by 109.59 feet, leaving only 161.41 feet. That is sufficient for ingress and egress, and defendant will not be "bottled up" as his counsel suggest. There is at present a concrete building on the main tract between 1,100 and 1,200 feet long and about 120 feet wide. There is in this building immense storage

room used principally for the storing of cotton, as well as a cotton pickery and a compress. The building fronts west and extends up to the western property line. The Louisiana & Arkansas Railway has several side tracks running parallel with and along the front of the building, with switches. The Illinois Central Railroad has tracks to the south of and near to the building. Cotton is moved into and out of the building over these tracks. But a large quantity of cotton is brought into it by wagons, trucks, and drays over a concrete roadway leading from the Jefferson Highway to the building. This roadway enters defendant's property near the northeast corner and crosses the triangular lot which plaintiff is to get, so that defendant's roadway, if it remains where it is, will cross plaintiff's double-track railroad. If the roadway is changed from its present location so as to connect with the highway at another point, it will be necessary to cross a spur track of the Louisiana & Arkansas Railway already built on the property. Therefore, whether the roadway remains where it is or is changed to another location, in either event 't will have to cross railroad tracks. The switching of cars over these tracks will introduce an element of danger to those who use the roadway, aside from delay and inconvenience caused by the presence of cars on the tracks, whether moving or stationary. Both the defendant and his expert, Mr. Hyman, testified that the remaining property will be damaged in this way and we think so too. This item of damage, coupled with that for diminishing defendant's frontage on the highway, we fix at $4,000.

It is evident that defendant's roadway will have to be torn up and reconstructed, and the testimony shows that this will involve an expense of $1,500. Plaintiff's line of railroad will run along the rear side and very near to the main building, where there are eight openings or "monitors." To avoid the fire hazard due to the emission of sparks from engines, these openings will have to be screened at an expense of $1,500. These are all items of damage which defendant is entitled to recover. They amount in the aggregate to $7,000. Defendant says that his remaining property will be additionally damaged on account of noise, smoke, and vibration. The trial judge properly refused to hear testimony in support of this claim, which is purely speculative.

Defendant claims also that the hazard from fire will be greatly increased on account of sparks from engines, and he lumps this item in with the others, all of which he says will amount to $50,000. The building is concrete and after closing the openings, for which we are allowing $1,500, there will be no further danger from fire.

For the reasons assigned it is ordered that the judgment appealed from be amended by reducing the award from $15,000 to $4,000 for the land taken, and by reducing the award for damage to the remaining property from $10,000 to $7,000. As thus amended the judgment is affirmed. It not appearing that plaintiff tendered to defendant the true value of the property or any amount for damages before the proceeding was begun, the plaintiff must pay all costs.