## LOUISIANA HIGHWAY COMMISSION v. TREADAWAY et al.

### No. 16558.

Court of Appeal of Louisiana. Orleans.

March 22, 1937.

Rehearing Granted as to Seven Defendants and Denied as to Others May 17, 1937.

*Rehearing denied April 19, 1937.

Loys Charbonnet and James Wilkinson, both of New Orleans, for appellants.

A. S. Cain, Jr., of New Orleans, for appellee.

JANVIER, Judge.

Louisiana Highway Commission is a political corporation of the state of Louisiana charged with the duty of building and maintaining a highway system throughout the state and having the power of eminent domain. For a great many years there has existed along the west bank of the Mississippi river a road extending many miles down the river from a point opposite the city of New Orleans. By Act No. 236 of 1924 and Act No. 330 of 1926 that road was made a part of the state highway system. The various defendants in these consolidated cases own contiguous tracts of land fronting on that road and extending back many arpents in depth. The highway commission, having determined to pave a portion of that part of the state highway system, considered it advisable to relocate the road farther away from the river at various points, including that at which it crosses the said tracts of defendants. Unable to agree with the various owners, the commission filed these suits, seeking to expropriate the necessary strips of land across the said contiguous tracts.

The defendants contend that there is no necessity for the construction of the new road and that there is no authority in law for it, since the statutes referred to provide for only one road and since that road is already in existence. They also claim, in the alternative, the value of the land taken, and they assert that they are entitled to be paid for certain consequential damage which each says he will sustain as the result of the construction of the road in accordance with the plans of the highway commission. They also contend that the petition in each case does not contain allegations showing that proper plans and specifications required by law were prepared or approved before the expropriation suits were filed.

In the district court the cases were consolidated and tried before a jury convened under the provisions of article 2626 et seq. of the Civil Code, and judgments based on the verdicts were rendered. From these judgments, the respective defendants have appealed devolutively, the district judge having refused to allow suspensive appeals.

In refusing to allow suspensive appeals, the judge a quo was correct. There are only two defenses which, in an expropriation suit, authorize the granting of suspensive appeals. One is that which is set forth in article 2636 of the Code, which provides for a suspensive appeal where the defendant contends "the quantity of land sought to be purchased * * * exceeds that which is reasonably necessary for the purpose intended." That article provides in terms that "the whole [is] always subject to the decision of the Supreme Court on appeal." The other situation in which a suspensive appeal is available to the defendant is that which is provided for under Civil Code, art. 2637, where it is sought to unnecessarily expropriate graveyards, dwelling houses, yards, gardens, or other appurtenances thereto. This article does not contain the provision found in article 2636 expressly authorizing an appeal, but it was held, in New Orleans Terminal Company v. Firemen's Charitable Association, 115 La. 442, 39 So. 437, that a suspensive appeal is available to the defendant in expropriation who presents either of the defenses authorized by articles 2636 or 2637 of the Civil Code. The codal provisions authorizing expropriation proceedings show clearly that in no other case may an appeal be taken on the question of the right to expropriate the property and that, in all other cases, the only question which may be heard on appeal—and that on devolutive appeal only—is that involving the price to be paid for the land sought to be expropriated and the amount to be paid as compensation for the consequential damage which may have been sustained. At this point it may be well to discuss the jurisprudence touching upon the allowance for such consequential damages as actually result since it is contended by plaintiff, highway commission, that there can be no allowance for such consequential damage.

In Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1, the court was relieved of the necessity of considering whether or not the construction of a highway across the land of the defendant ren-

dered the highway commission liable for the cost of the necessary fences paralleling the highway and for the cost of the necessary drainage ditches and culverts by reason of the fact that, in that case, the highway commission agreed, through its counsel, at the trial that those items would be paid for by the commission.

In Louisiana Highway Commission v. Boudreaux, 19 La.App. 98, 139 So. 521, it was held that the highway commission is liable for such consequential damages as actually result from the expropriation of the property and the construction of the highway.

In Lewis v. Colorado Southern, N. O. & P. R. Co., 122 La. 572, 47 So. 906, and in Colorado Southern, N. O. & P. R. Co. v. Boagni, 118 La. 268, 42 So. 932, it was held that such consequential damage as results from the construction of railroads and highways, etc., must be borne by the plaintiff in expropriation. We conclude that allowance must be made for actual consequential damage.

Questions identical with those presented by the contention that the road is not properly located and that it is not properly planned were presented to the Supreme Court in Louisiana Highway Commission v. Heirs of Hays et al., 172 So. 432, 433, decided January 15, 1937, in which the court said:

"As the highway in question is a State-Federal Aid public road, the location of this project represents the joint judgment of the engineers of the Bureau of Public Roads and the Louisiana Highway Commission.

"In the case of Crichton v. Louisiana Highway Commission et al., 172 La. 1033, 1039, 136 So. 43, 45, the authority of the commission to shift the location of Route No. 10 in the Parish of Red River was disputed, and this court said in that case: 'The engineers are the ones who should know, and, as a matter of fact, do know.

" 'We cannot substitute our own opinions for the opinions of engineers in matters of this kind.'

"In Board of Levee Commissioners v. Jackson's Estate, 113 La. 124, 129, 130, 36 So. 912, 914, it is said by this court: 'Here, again, we would scarcely be justified in substituting our judgment to that of these engineers. Large interests are intrusted to these boards. They have a discretion, and of this discretion it has been said that it

should not be lightly set aside. Am. & Eng. Ency. of Law (2d Ed.) vol. 20, p. 239 and notes.' "

It is said that the various suits should be dismissed because the respective petitions do not contain allegations showing compliance with section 1 of Act No. 24 of the Fourth Extraordinary Session of 1935, which section, inter alia, provides that "no highway shall be located, laid out or constructed by or with the approval of any parish, ward, public board or commission, or road or levee district or any other agency of the State, until complete plans and specifications of the improvements contemplated and the work to be performed shall have been prepared by competent engineers and submitted to and approved by the Louisiana Highway Commission and the State Highway Engineer." That identical question was presented in the Hays Case and there the court, referring to the statute from which we have quoted, said:

"That the purpose of this act is to stop all other agencies from attempting to locate or construct highways, until complete plans and specifications of the proposed work have been submitted to and approved by the Louisiana Highway Commission, jumps to the eye from a casual perusal of the provisions of the act which, clearly, are inapplicable to the cases under consideration."

As a result of that decision, the question of the right of the defendants to raise the questions above discussed is set at rest and we hold that nothing remains before us except to consider the contentions of defendants' that the jury which rendered the various verdicts was not properly composed and that the amounts awarded to the respective defendants were inadequate and that the judge a quo was in error in excluding certain alleged expert evidence tendered by defendants.

Defendants, in objecting to the jury which rendered the various verdicts, contend, first, that the trial jury contained ineligible persons, one of whom was not a freeholder and several of whom were allegedly interested in the outcome, and, second, that the entire panel from which the trial jury was drawn was defective in that it contained ineligible persons and that, for both of these reasons, the verdicts should be set aside.

The contention concerning the entire panel is that there was no compliance with the provisions of article 2632 of the

Civil Code, under which the clerk and the sheriff are required "to make a list of forty-eight freeholders, residents of the parish in which the land lies, and not interested in the issue to be tried," from which 48 persons there shall be summoned 24, who shall appear on the day of the trial and from whose number the jury of 12 shall actually be chosen. It is said that among the 48 first selected were some who were not actually freeholders and some who were interested in the matter at issue because of their employment by the parish. It is contended that, had those who are said to have been ineligible been eliminated, there would not have remained in the first group 48 and in the second 24 against whom no charge of ineligibility could have been made, and that the requirement of the Code that 48 eligible freeholders be first selected and that from them 24 eligible persons be drawn is mandatory, and that, if even one of the group of 48 chosen, or of the group of 24, is, for any reason, ineligible, the entire panel is defective and no proper trial jury can possibly result therefrom. We think that no such conclusion was intended by those who evolved and enacted into law the system set forth in the Code, by which juries in expropriation cases are to be obtained. The reason which prompted the framers of the Code to provide that 48 names be first drawn was, no doubt, a realization of the fact that some of those 48 might not be eligible and that, even after eliminating those against whom objections might be made, there should remain at least 24 who should compose the final panel of talesmen from which the jury of 12 might be drawn, and that from the 24, after the elimination of objectionable and ineligible persons, a proper jury of 12 might be selected.

Counsel for appellants call to our notice two cases decided by our Supreme Court which, they say, are authority for their view that the inclusion, among the first 48, of ineligible persons authorizes the setting aside of the verdicts rendered. These cases are State v. Tate, 185 La. 1006, 171 So. 108, 113, and Bradley v. Shreveport Gas, Electric Light & Power Co., 139 La. 1029, 72 So. 725, 726. In State v. Tate the court found the method adopted by the jury commissioners in selecting the entire venire improper for the reason that the commissioners had taken all of the names of the veniremen from the list submitted by the district attorney. Obviously there was error in that method because the district attorney was the representative of one of the parties and the delegation to him of the right of selecting veniremen was the delegation of that right to counsel for one of the parties. The court said:

"While the law does not restrict the commissioners to any particular mode of making their selections, it does not, and cannot, sanction their delegation of that power to the counsel for either of the parties litigant. State v. Newhouse, 29 La.Ann. 824."

But here there was no complaint against the method adopted, but only against the inclusion of some ineligible persons, and the resultant retention of ineligible persons among the 48 required by the article of the Code. If this argument should be permitted to prevail, practically every jury verdict in any case would be set aside for the same reason, because, in nearly every venire, there may be found at least one person who, because of interest, or for some other reason, is not eligible. For instance, in section 1952 of Dart's Louisiana General Statutes (Act No. 58 of 1904, p. 137, § 4), it is provided that in parishes other than Orleans the jury commissioners shall select 300 competent, good, and true men, and from them shall select 30 jurors who shall be summoned to appear for examination for selection as petit jurors. Could it possibly be said that, because 1 or 2, or more of the 300 should afterwards be shown to have been incompetent because of interest or otherwise, any verdict rendered by the petit jury drawn from that venire should be set aside?

There are similar provisions concerning the selection of jurors for the parish of Orleans and similar provisions concerning the selection of special jurors in special cases. We think that it cannot possibly be said that because, in the original selection, there might be 1 or 2 or more ineligible persons, any verdict rendered by the petit jury which might finally result would be subject to attack on the ground that one or more of the original venire should not have been included.

Nor can Bradley v. Shreveport Gas, Electric Light & Power Co. afford any comfort to defendants as authority for their attack on the venire as a whole, for there, again, the entire supplemental panel, which was objected to, was found to have been selected by an improper method. The contention was not, as it is here, that ineligible persons were included. There, the original venire having been exhausted before the

trial jury could be completed, the district judge ordered the sheriff to summon tales jurors, wherever they could be found. Objection was immediately made on the ground that the proper method for the selection of additional tales jurors is provided by section 4 of Act No. 58 of 1904 (page 137), which requires that additional names shall be formally drawn in accordance with the statute. When the new talesmen had been sworn, the objection was again made and overruled. The Supreme Court held that the method of selecting the supplemental talesman was improper and that, inasmuch as 2 of the trial jurors were afterwards drawn from those improperly selected, the petit jury had not been legally constituted and that, since timely objection was properly made, the verdict should be set aside. That case has no application here. So much for the attack on the entire venire.

It is further said, however, that on the trial jury itself were ineligible persons—ineligible because, in the case of one man, it is said that he was not a freeholder, and in the case of others, because of their alleged interest in the outcome of the cases on trial. The alleged interest is said to have been shown by the fact that those jurors were employees of the parish. It is said that the evidence shows that the highway commission itself is not provided with funds with which it may pay for land expropriated and that, therefore, such funds as may be required will have to be produced by the parish. The argument is that the employees of the parish are interested in seeing that the funds of the parish be not depleted and that, therefore, they will not render a true and fair verdict where the parish itself is interested. There are two answers to this argument. In the first place, the record does not show that the parish is interested to the extent contended for by defendants, and, in the second place, the objections on this ground were not timely. Had this objection and the objection that one of the jurors was not a freeholder been made before the trial jury was finally agreed upon and sworn and before the taking of evidence commenced, either might have been sustained on proper showing. But when the jurors were accepted and the taking of evidence had commenced, it was too late for counsel to object to inclusion on the jury of those who might otherwise have been held ineligible.

It is argued that the objections were made as soon as the facts became known,

but we think that counsel should have discovered these facts sooner. As soon as the suits were filed, the 48 veniremen were selected. Those names were made known; a list was served on each defendant, and counsel for defendants could at once have ascertained whether the persons whose names were selected were freeholders and whether any of them were parish employees. Their failure to investigate these facts at that time and their acceptance of the jury as constituted deprives them of the right to object now.

Bradley v. Shreveport, etc., Power Co. supra, is relied upon as authority for the right of defendants to complain of the alleged ineligibility because there the objections to the two final jurors were not made until after 10 of the jurors had already been chosen. It is true that the Supreme Court in that case held that the objections did not come too late, but there objection could not have been made sooner because, until the second venire was drawn, there was nothing to which objection could have been made. The court, in discussing this question, said:

"Counsel for plaintiff argues, in effect, that the objection came too late, because made after the trial had begun, after ten jurors had been selected, after the exhaustion of the venire drawn by the commission, and after the order to summon the talesmen had been made. But conceding arguendo that the trial had begun, though the jury had not been impaneled and sworn, no occasion arose for the making of the objection until the regular venire was exhausted."

That the objection, had it been made after the taking of evidence commenced, would have been considered as too late, is made very evident by the court's discussion concerning the time at which the objection was actually made. Note the following:

"There is a difference between the counsel upon the question whether the objection was made only when the tales jurors were actually presented, but the statement of the judge, as we take it, was indorsed on, or attached to, the bill of exception, and it is to be presumed that in signing it the judge considered that he was signing the bill, which states that an objection was made to the order, as well as to the swearing of the talesmen on voir dire, and we accept the records so made as conclusive of the question."

Counsel for defendants point to State v. Keziah, 110 La. 11, 14, 34 So. 107, 108, in which appears the following:

"In State v. Whitesides, 49 La.Ann. [352] 356, 21 So. [540] 541, we said (citing a number of authorities) 'The rule is stringent that the defendant, if he does not interrogate as to the qualifications of a juror, cannot take advantage of the want of necessary qualifications after verdict. If the juror answers falsely, and this fact is ascertained for the first time after verdict, this disqualification may be urged as ground for a new trial.'"

Defendants contend here that the juror in question answered falsely concerning his ownership of real estate. That, however, is a matter on which they should have advised themselves prior to the commencement of the trial. One of the purposes of the requirement that the 48 names be selected and that the 24 be drawn from those 48 at least ten days prior to the trial was that counsel interested might be afforded an opportunity to investigate those matters; otherwise counsel, finding among the venire names of ineligible veniremen who might answer falsely as to their qualifications, might accept them and then abide by the verdict, if satisfactory to their interests, or, if not satisfactory attack it on the ground alleged here.

Since counsel did not investigate and discover the ineligibility of any of the persons whose names appeared on the published lists, their acceptance of the petit jury makes it impossible that they now present the objections which we have discussed.

We have been much concerned over the contention made by defendants that the testimony of two witnesses, alleged experts as to values, was excluded by the trial judge. The two witnesses in question were Lee Hays and George Lee Hays, both of whom testified that they had been residents of that vicinity for many years. Both gave extensive evidence concerning the lack of necessity for the construction of the road and concerning the damage which might result to adjacent landowners and both were asked for expert opinions as to the value of the land taken. In both instances, objection was made and sustained, apparently on the ground that neither was an expert qualified to testify on the subject under discussion. It is well settled by the Supreme Court that the opinion of a person who has lived for a long time in the vicinity and is thoroughly acquainted with property values is competent evidence in such a case. In Louisiana Railway & Navigation Company v. Morere, 116 La. 997, 41 So. 236, 237, the court said:

"The witness Deckbar was ruled out as not an expert, although he had lived 22 years in the neighborhood, and was thoroughly acquainted with the property in the neighborhood and with the property to be expropriated and said that in making his estimate he would take in consideration all the sales that had been made of real estate in the neighborhood in recent years. The ground of his exclusion was that he would also take into consideration the amount allowed by the jury in the suit of N. O. & W. R. R. Co. v. B. Morere [District Court, Parish of Jefferson], referred to hereinabove.

"We think the witness should have been permitted to testify. The objection went to the effect of his evidence."

Counsel for defendants also direct our attention to City of New Orleans v. Atkinson, 180 La. 992, 158 So. 363, 364, and they state erroneously that that case contains a statement reading as follows:

"In expropriation proceedings those who are residents of the vicinity where the property is situated are presumed to possess some personal knowledge of property value and are clothed to some extent with the authority and character of experts."

As a matter of fact, the court did not hold that those who are residents of the vicinity are qualified as witnesses because that question was not involved, but the court did hold that "jurors," being selected from the vicinity, are themselves qualified to some extent and are presumed to know, in a general way, the value of lands in the vicinity. The quotation, as it appears in the quoted decision, is as follows:

"In expropriation proceedings the jurors, who are residents of the vicinity in which the property is situated, are presumed to possess some personal knowledge of property values and are clothed to some extent with the character and authority of experts. They may exercise, in part at least, their independent judgment in fixing the value of the property to be taken. Their verdicts as to the value of the property to be taken are entitled to respect and have some weight with the court."

However, we believe it to be settled that the opinions of such men as those whose testimony was rejected on this particular point constitute competent evidence, but we do not believe that the matter should be remanded because of the unimportant error in this regard. The record contains more than 400 pages of evidence. Nine witnesses testified on behalf of plaintiff and more than 25 on behalf of the defendants and almost every one of them discussed the question of value and the questions which were involved in the testimony sought to be elicited from the two witnesses in question and we do not believe that the ends of justice would be properly served by remanding the case in order that merely cumulative evidence might be adduced, particularly in view of the fact that, as the Supreme Court said in the Atkinson Case, supra, jurors in expropriation cases "may exercise, in part at least, their independent judgment in fixing the value of the property to be taken."

We reach the question of the values of the respective tracts taken and of the consequential damage, if any, which has been sustained, or will be sustained by each of the defendants, and we conclude, as we have already stated, that for such actual consequential and nonspeculative damage as may have been sustained, plaintiff highway commission should be held liable. We note that most of the consequential damage which is claimed is admittedly chargeable to plaintiff highway commission and that the said commission has included in its plans and specifications proper drainage ditches, proper allowance for removal of fruit trees by contract, and proper construction of parallel fences and of culverts under the proposed highway. Nearly all of the defendants contend that, by reason of the construction of the road in the rear, it will be necessary for them to construct on their respective properties roads connecting the front and the rear, by means of which they may have access to the rear of their properties and by means of which, also, they may have access to the road under construction. So far as the road which is under construction is involved, the evidence amply shows that they may reach that by the road which is now in front of their respective properties; that is to say, each one of the defendants, if he desires to reach the new highway to go down the river or up the river, may do so by means of the highway now in existence in front of his property. We, therefore, do not see any necessity for him to have a connecting road which will make his residence accessible to the highway where the said highway crosses the road of his property, but we do believe that in each case, where it will be necessary that the owner erect a bridge across the canal on one side of the highway and across the ditch on the other side in order that, for purposes of cultivation or pasture, he may be able to cross the said highway with his farming implements or with his cattle, an allowance for the cost of those bridges should be made. Apparently no such provision is made in the plans and specifications of the highway commission. The evidence is conflicting as to the cost of such bridges. We conclude that, for the erection of the two bridges, one on each side of the highway, on each tract, there will be required the expenditure of $45, and we think that each defendant should be allowed this amount.

In the answers of defendants were claims based on the alleged fact that drainage would be interfered with by the highway embankment. When it developed that the highway commission had provided amply for necessary drainage under the highway by means of culverts, it was suggested in argument before this court that, because of the fact that the drainage would then be so completely open, the sea water from the rear of defendants' lands would be permitted to encroach upon and flood the front portions of the properties. In view of the claim which was originally made that adequate drainage had not been planned, it seems rather inconsistent to present the claim as it now appears. At any rate, we are not convinced that the record shows that the result feared will actually be brought about.

Another claim is that the property owners raise cattle and that, since the cattle will have to pass back and forth across the road, it will be necessary that adequate attendants be permanently provided to see that the cattle are safely escorted to and fro across the highway. We think that such a claim as this is so uncertain that we should not give it consideration.

As to the actual acreage value of the land taken, there is much dispute. When the answers were filed, all of the defendants, except 7, alleged that "said land * * * is not worth over $10.00 an acre." The seven alleged that their land was suitable for cultivation and was worth $480 per acre.

It is true that evidence was tendered to show the actual value of the land first referred to exceeded $10 per acre, but even if, in view of the answers of defendants, such evidence was admissible, we do not think that any value substantially in excess of $10 per acre was shown. As to the land of those 7 defendants, which, it is said, is worth $480 an acre, the evidence does not show any such extraordinarily high value. The results reached by the jury, all of the members of which live in the locality and are familiar with values, are more accurate than would be estimates of ours based on a labored analysis of all of the conflicting testimony. An allowance should be made in each case so that each defendant may find it possible to construct the necessary bridges over the drainage ditch and over the canal which parallel the highway.

The following tabulation shows such details as we think important concerning each parcel of land:

| Owner | Acreage Expropriated: | Value Claimed Per Acre | Judgment: |
|---|---|---|---|
| Mr. and Mrs. Geo. Treadaway | .19 | $10.00 | $1.90 |
| David Solis | .94 | 10.00 | 9.40 |
| Mrs. E. C. McCurdy | .99 | 10.00 | 9.90 |
| John Treadaway | .48 | 10.00 | 4.80 |
| Maurice Barthelmy | .17 | 480.00 | 5.95 |
| Orne St. Ann | .51 | 480.00 | 16.85 |
| D. J. Ingraham | .45 | 10.00 | 4.50 |
| Anthony Thiel | .78 | 10.00 | 7.80 |
| Norbert Thiel | .45 | 480.00 | 13.50 |
| V. Boudreaux | .91 | 10.00 | 9.10 |
| Ernest Encalade | .75 | 480.00 | 26.75 |
| Lothrop Encalade | .80 | 480.00 | 34.40 |
| C. Barthelmy | .54 | 480.00 | 16.20 |
| Gabriel Barthelmy | .52 | 10.00 | 5.20 |
| August Treadaway | .59 | 10.00 | 5.90 |
| Ovide Solis | .42 | 10.00 | 4.20 |
| Mrs. Elizabeth Jackson | .22 | 10.00 | 2.20 |
| Pierre Encalade | .64 | 480.00 | 22.40 |
| Elbridge Treadaway | .86 | 10.00 | 8.60 |
| James Treadaway | .49 | 10.00 | 4.90 |
| Sam Treadaway | .91 | 10.00 | 9.10 |
| Ernest Treadaway and Mrs. Stella Treadaway Bendix | .15 | 10.00 | 1.50 |
| Arthur Lee and Robert Lee | .64 | 10.00 | 6.40 |
| Eddie Ballay | .49 | 10.00 | 4.90 |
| Joseph Mehroff | .31 | 10.00 | 3.10 |

It is therefore ordered, adjudged, and decreed that the judgments appealed from be and they are each amended by the increase of each by the sum of $45 and that, as thus amended, each of the said judgments be and it is affirmed.

All at the cost of plaintiff.

Amended and affirmed.