133 So.2d 828 (1961)
TEXAS GAS TRANSMISSION CORPORATION
v.
Alex FUSELIER.
No. 221.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1961.
On Rehearing November 7, 1961.
*829 Shotwell & Brown, by Burt W. Sperry, Monroe, Frugé & Foret, Ville Platte, for plaintiff-appellant.
Fusilier, Pucheu & Soileau, by J. William Pucheu and L. O. Fusilier, Ville Platte, for defendant-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
SAVOY, Judge.
This is an expropriation suit by plaintiff against defendant for the purpose of obtaining a right-of-way or servitude over the land of defendant for the construction of a thirty-inch pipeline across a portion of defendant's property. The only issue on appeal is the value of the property expropriated.
The district court allowed defendant the sum of $4,234 for the property expropriated by plaintiff. The award was itemized as follows:

(1) Relevel............................ $ 290.00
(2) Loss of rice....................... 819.00
(3) Loss of pasture.................... 525.00
(4) Loss of relocating relief pump..... 200.00
(5) Loss of shade trees................ 100.00
(6) Loss of crayfish sales............. 500.00
(7) Loss of value of remaining land.... 1500.00
(8) Value of rights expropriated ...... 300.00

*830 The evidence disclosed that the right-of-way taken is fifty feet wide and is approximately 2.45 acres. The proposed pipeline will run 2,136 feet north and south across and approximately in the middle of defendant's tract of land
Plaintiff appealed from the ruling of the trial judge. Defendant answered the appeal, asking for an increase in the award.
The law on the subject of compensation and damages is stated in the case of Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914, 916 in the following language, namely:
"The law is well settled, and counsel for the respective litigants agree, that the amount due for private property expropriated for public purposes is its market value when taken. Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1. The market value of property is its fair value between one who wants to purchase and one who wants to sell, under ordinary and usual circumstances. Opelousas, G. & N.E. Railroad Company v. Bradford, 118 La. 506, 43 So. 79; Louisville & N. Railroad Company v. R. E. DeMontluzin Company, Inc., 166 La. 211, 116 So. 854; Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354. It does not mean speculative value. Louisiana Highway Commission v. Lasseigne, 177 La. 440, 148 So. 672. Furthermore, compensation is due to the owner not only for the value of the property actually taken but also for damage caused to his remaining portion after the taking. Louisiana Highway Commission v. Guidry, supra."
In deciding whether the award made to defendant was excessive, we will determine, first, the value of the right-of-way taken by plaintiff.
Plaintiff called as witnesses in its behalf Mr. Joseph W. Fontenot, Mr. E. J. Jandacek, and Mr. Gilbert H. Vidrine.
Mr. Fontenot, a registered real estate dealer was qualified by the court as an expert. He appraised the property expropriated at between $200 and $250 an acre. He arrived at the estimate by comparing subject property with four other sales in the vicinity.
The next witness for plaintiff was Mr. Gilbert H. Vidrine. Mr. Vidrine was in the real estate business and was an abstractor. He arrived at the same conclusion that Mr. Fontenot did as to the value of the property involved in the right-of-way. He stated that the highest and best use of the property was for rice and cattle.
Mr. E. J. Jandacek was chief engineer for plaintiff corporation. His testimony dealt with the laying of the pipe and cost of the pipeline and other related matters.
Defendant used in his behalf the following witnesses: Mr. Wallace J. Reed, Mr. Elwood Tate, Mr. J. D. Vidrine, Mr. Morell Fontenot and himself.
Mr. Tate is an agriculture teacher and testified generally as to the yield per acre on the property in question, price per barrel, and the value of the property for pasturage possibilities. He testified that since the pasture consisted of rice stubbles after each harvest that said pasture would not have a great value for that purpose.
Mr. J. D. Vidrine testified that he was experienced in building crayfish lakes, and gave the approximate yield of 1,000 pounds of crayfish per acre and the price per pound.
Mr. Wallace J. Reed stated that he was a general farmer and cattle raiser. He said he had pipelines crossing his property *831 and gave the estimate of releveling cost after the pipeline crossed the property in the instant case. He also stated that after a pipeline is laid the property embracing the pipeline will not give the maximum yield of the specified crop thereon.
Mr. Morell Fontenot testified that he was a tenant farmer for defendant. He gave the yield per acre of the rice land in controversy. He testified further that he had commenced the construction of a levee to build a crayfish lake on the property.
Defendant testified on his behalf and stated that he would have to relevel the property on the right-of-way granted and would have to re-install a relief pump; that three or four trees would be destroyed.
On rebuttal, Mr. Henry P. Gossen and Mr. Martin Lyons testified as witnesses for plaintiff. They were both farmers and testified generally as to the percentage loss of the crop on the expropriated right-of-way.
The defendant introduced in evidence a deed whereby Transcontinental Pipe Line Corporation purchased a tract of land in the vicinity for the sum of $2,500; said property contained 5.31 acres of land. The jurisprudence of this state has been established to the effect that a sale made to the condemning authority under the threat of expropriation is not a willing seller transaction and is therefore not controlling as a comparable sale, although it may be considered in determining value. State v. Dowling, 205 La. 1061, 18 So.2d 616; Orleans Parish School Board v. Paternostro, 236 La. 223, 107 So.2d 451; Parish of East Baton Rouge v. Edwards, La.App. 1 Cir., 119 So.2d 175.
Considering all of the evidence in the case, we believe that an award of $200 per acre for the 2.45 acres, or a total of $490, is adequate for the property taken herein.
The trial judge granted judgment in favor of plaintiff for $1,500 for loss of value of remaining land. We have examined the record and find there is insufficient evidence to make a determination of this item and in the interest of justice we will remand the case to the lower court for the restricted purpose of receiving additional evidence on this item.
The trial judge awarded defendant $200 as being the cost of relocating a relief pump owned by defendant and located on the property expropriated. Defendant was the only one who testified in connection with the relief pump. The pump was connected by means of 150 feet of six-inch pipe welded together and placed on crossties. Defendant testified he was familiar with the construction of this equipment. He said it would cost between $600 and $750 to re-install the relief pump and dump canal. We believe the award by the district judge was adequate.
We are of the opinion that the award of the trial judge to relevel the property, for loss of rice, loss of pasture, and loss of crayfish sales should not be allowed separately from the value of the property taken by plaintiff. The item of shade trees is speculative, as the trees were wild growth, and this item is rejected.
For the reasons assigned, the judgment of the trial court is amended so as to increase the amount of the award for the servitude taken from $300 to $490, and by disallowing the award for loss of rice, loss of pasture, loss of shade trees, loss of crayfish sales, and for releveling the property, and the case is remanded to the district court for the limited purpose of showing the loss of value to the remaining land.
Costs of court are to await final determination of the case.
Amended and affirmed in part, remanded in part.

*832 On Rehearing.
Before TATE, FRUGÉ, SAVOY, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
A rehearing was granted in this matter to reconsider the items of compensation and damages hereinafter discussed. Addressing ourselves first to the item of damages for releveling the entire 29 acre rice field through which the proposed pipeline will pass, it is now our conclusion that we were in error in our original opinion in denying an award for this item. The testimony of the defendant, and of his witnesses, Wallace J. Reed, and Morell Fontenot, as well as the testimony of plaintiff's own witness, Henry T. Gossen, shows clearly that after the pipeline has been completed the entire rice field through which it passes will have to be releveled at a cost of $10 per acre or a total of $290 in this case. It is the contention of counsel for the plaintiff that our Louisiana jurisprudence has developed what he calls the "pure theory" of expropriation damages which allows only two general classifications thereof, that is, first, compensation for the property actually taken, and second, severance damages to the remaining property not taken. See Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914 and the many cases cited therein. Under this jurisprudence, plaintiff contends that the cost of releveling that portion of this 29 acre rice field, lying outside the proposed pipeline right of way, must necessarily fall within that classification called "severance damages to remaining property not taken." With this proposition we agree. However, we do not agree with the next point in plaintiff's line of argument which is that the only way to prove severance damages to remaining property is to show by expert opinion evidence, or by comparable sales, the amount of diminution in market value caused by the expropriation.
As stated in our original opinion herein, the defendant has failed to prove by expert opinion testimony, or by comparable sales, any diminution in market value to the remaining property. Therefore, if we follow plaintiff's line of reasoning, we must deny the cost of releveling. The precise question presented here is whether an award for releveling the remaining portion of this rice field can be made simply on proof that it will cost $10 per acre, or whether such an award must be denied because there was not additional evidence (in the nature of expert opinions or comparable sales) to show how this cost of releveling might be related to a diminution in market value of the entire 95 acre farm. While we have found no Louisiana jurisprudence which discusses the theory of this issue, we find there are several cases in which similar items of damages have been allowed on the basis of evidence similar to that in the instant case. The most recent and the most pertinent to the issue is Gravity Drainage District No. 1 of Rapides Parish v. Key, 1958, 234 La. 201, 99 So.2d 82, 87, in which the plaintiff was expropriating a right of way for a drainage canal which was to run along a railroad track in such a way as to separate the tracks from the remaining property of the defendant which was shown to have considerable value for industrial sites due to its access to the railroad. It was shown that by constructing across the proposed canal a culvert, suitable for a spur track, at a cost of $3,600, the defendant's land would still retain its usefulness for industrial purposes, which was admittedly its highest and best use. Without the culvert the property would have been rendered useful only for residential purposes causing a much greater loss in market value. In awarding $3,600 for the cost of building the culvert the court held as follows:
"`However, as was stated above, all of the experts who testified agree that if a culvert for a spur track was constructed *833 over the proposed canal the property would still be useful for industrial purposes, but according to Mr. Aertker there would be a loss of value of $4,000.00 per acre simply by reason of the canal being dug.'
"(8) Since defendants have only been awarded severance damages for the diminished value of their lands, and we hold, supra, that the property should and can remain industrial if culverts are constructed, a prayer for the cost of constructing culverts does not exclude a cost for severance damages. This could only be true if the nature of the property were changed and defendants received the difference between the original market value and the residual value of the property with a changed nature."
In the case of State through Department of Highways v. Laird, 1951, 219 La. 567, 53 So.2d 674 involving the expropriation of defendant's land to widen an existing highway from two lanes to four lanes, the court allowed an award of $100 for the cost of rebuilding a bridge providing access from defendant's remaining property to the new highway.
In City of New Orleans, etc. v. Atkinson, 1934, 180 La. 992, 158 So. 363, 366 the plaintiff's proposed railroad crossed defendant's concrete roadway leading from the public highway to a large storage building located on defendant's land. In allowing recovery for the cost of reconstructing defendant's roadway, as well as the cost of rearranging his storage building, the court held as follows:
"It is evident that defendant's roadway will have to be torn up and reconstructed, and the testimony shows that this will involve an expense of $1,500. Plaintiff's line of railroad will run along the rear side and very near to the main building, where there are eight openings or `monitors.' To avoid the fire hazard due to the emission of sparks from engines, these openings will have to be screened at an expense of $1,500. These are all items of damage which defendant is entitled to recover. They amount in the aggregate to $7,000."
In the case of the City of New Orleans v. Giraud, 238 La. 278, 115 So.2d 349, 354 where a proposed street was to run only 23 feet from the front of defendant's valuable dwelling, the court made an award for decrease in market value, but in addition allowed items of damages for new fences and sidewalks as follows:
"In his answer to the appeal, defendant contends that the judge should have allowed him compensation for the costs of putting fences and sidewalks on both sides of the new street, instead of on only one side. The jurisprudence (see Louisiana Highway Commission v. Treadaway, La.App., 173 So. 209) indicates that defendant is legally entitled to this claim. Besides, the city attorney stated in oral argument here that he does not contest defendant's right thereto. As pointed out heretofore, a large portion of defendant's property, which included the expropriated tracts, was completely enclosed by a fence prior to the taking, and the city should provide for refencing the lands which the expropriation has left unenclosed. Also, the evidence shows that the city contemplates a sidewalk on each side of the new street and, since the unexpropriated portions of the land front on both sides of the new street, defendant should be compensated for the costs of those sidewalks."
We note that in City of Shreveport v. Worley, 240 La. 117, 121 So.2d 506, our Supreme Court criticized its previous decision in City of New Orleans v. Giraud, supra, by stating that the cost of laying sidewalks cannot be allowed as a special *834 item of damages where the cost of said sidewalks is assessed by a municipality, since the landowner will actually recover the amount of the assessment in the enhanced market value of his property. However, we do not believe that this special circumstance of the existence of an assessment detracts from the applicability of the theory of the Giraud case to the instant case where no assessment was involved.
Also, we note that in our original opinion in the present matter we allowed as an item of severance damages, the sum of $200 for relocating a relief pump which was either in or very near the proposed pipeline right of way. This award was made without any opinion testimony as to diminution in market value of the entire farm by reason of the necessity of moving the pump, the sole evidentiary basis for the award being the estimated cost of relocation.
The jurisprudence set out above shows beyond question that items of severance damages, such as the one for releveling defendant's rice field in the instant case, have been allowed many times by our Supreme Court, on the basis of evidence as to the cost of restoration, building fences, providing access, etc. In our opinion, the law is correctly set forth in 18 Am.Jur. 910 as follows:
"Sec. 269. Expense Necessary to Make Remaining Land Usable.When part of an owner's property is taken for a public use, the owner may be damaged from inability to make the most advantageous use of the remaining land without additional expense. The cost of restoring the remaining land to a condition that will make it available for use, if a reasonable and proper method of meeting the damage caused by the taking, is a proper element to consider. Of course, there can be no double recovery for an item of expense. So, where the cost of restoring a building to its former state has been covered by an allowance for the reduced value of the building, there can be no separate allowance for items expended in the restoration."
Applying the above statement of law to the facts of the instant case, we find that defendant will be damaged from his inability to continue to use the remaining portion of his 29 acre field for its most advantageous use, which is rice farming, without going to the additional expense of releveling the entire field. The cost and method of releveling appears to be entirely reasonable, and, of course, there is no double recovery for this item of expense as it has not also been allowed in any diminution in market value of the farm. We therefore conclude that defendant is entitled to an award of $290 for the cost of releveling his 29 acre rice field.
Considering next the items for "Loss of rice" and "Loss of pasture" we stated in our original opinion that these items of damages should not be allowed separately from the value of the property taken. While we still adhere to this reasoning, we think that perhaps a little further explanation should be made here. The loss of rice and pasture in question is that anticipated on land located within the right of way itself, for a period of three to six years after completion of the pipeline, caused principally by spreading over the surface, the sterile soil dug from deep in the pipeline trench. The testimony shows clearly that for several years after completion of the pipeline, this strip of land in the right of way will not be as productive as the remainder of the farm. In our original opinion we did not allow a special item of damages for this loss, but we did consider it as a factor in increasing the award made by the lower court for "value of rights expropriated", from approximately $120 per acre to $200 per acre. As stated in our original opinion, the market value of the fee title to the land was shown to be $200 per acre. (This valuation does *835 not include the minerals.) Since we have awarded defendant full value for the 2.45 acres located within the right of way, we do not deem it proper to allow the defendant an additional amount for loss of productivity of crops from this same land for a period of several years after completion of the pipeline. In our opinion this would be double recovery. The cases of Louisiana Rural Electric Corporation v. Guillory, 224 La. 73, 68 So.2d 762; Louisiana Highway Commission v. Hoell, 174 La. 302, 140 So. 485, and Texas Pipeline Company v. Johnson, 223 La. 380, 65 So.2d 884, 38 A.L.R.2d 785 involved destruction of growing crops destroyed by the expropriating authority. Of course that type of damage is recoverable if proved, but the instant case does not involve growing crops, but rather crops which are to be planted in the future. The cited cases, as well as others relied on by the defendant, are therefore distinguishable.
In his argument on rehearing, defendant argues strenuously that an award should be allowed for "Loss of shade trees". The evidence shows that three trees, of an unknown variety, each about 16 feet in heighth and 6 inches in diameter would have to be cut from the right of way. These are wild trees which grew up along the side of a canal. Witnesses for the defendant testified that the trees were worth $25 each because they provided shade for defendant's cattle. They were not shown to have any other value. However, defendant himself admitted that there were many other similar trees nearby on his farm which would also provide shade for his cattle.
In our original opinion we stated that damages for loss of these shade trees could not be allowed because this item was too speculative, but on reconsideration, it is our opinion that an even better reason for denial of this item is that the value of such wild trees, growing within the right of way, cannot be allowed separately from the value of the property actually expropriated. Under a very similar set of facts our Supreme Court, in the case of State of Louisiana through the Department of Highways v. Glassell, 226 La. 988, 77 So.2d 881, 885, with considerable citation of authority, held the following to be the law:
"We think that this point is well taken. The pecan trees in the instant case were not grown on the land as a special crop by defendant; they are native pecans which have sprung up indiscriminately on different parts of the land. Therefore, their value cannot be regarded as constituting a separate item of damage to defendant and should have been considered by the judge only in determining the value of the land on which they were located."
As to the item for "Loss of crayfish sales", defendant testified that, for the first time, he planned during the year the pipeline was to be constructed, to flood his rice stubble, after harvest, to raise crayfish, but was unable to do so because of the pipeline construction. Defendant had never raised crayfish before. This was nothing more than something defendant stated he planned to do, but had not yet started. The lost sales were not proved with certainty. Therefore, we adhere to our original opinion that this item of damages must be denied as being too speculative and uncertain.
The final item to which we address ourselves is "Loss of value of remaining land." The trial judge allowed $1500 for this item of severance damages, but gave no reasons for his conclusion that the market value of this farm was diminished to this extent by reason of the expropriation. In our original opinion we stated the evidence was insufficient to substantiate this award and we still adhere to this conclusion. However, feeling that defendant probably had suffered some diminution in market value to his farm by reason of this 30 inch gas pipeline we ordered that this case be remanded *836 in order that defendant might prove the extent to which the market value of his entire property had been affected.
During argument on rehearing, counsel for plaintiff has urged that we were in error in ordering a remand, because on the first trial defendant did attempt, but was unable, to prove any diminution in market value. The record shows that only two witnesses testified on this factual issue. Defendant himself stated that he thought his farm would be worth $2,000 less after the pipeline crossed it, but under cross-examination defendant admitted that he had never bought or sold any farm land, much less a farm crossed by pipelines. Defendant was not qualified to any degree whatever to give such an opinion and his testimony clearly cannot outweigh that of plaintiff's witness, Gilbert H. Vidrine, a real estate agent of many years experience in this area, who stated that in his opinion the market value of this farm would not be diminished by the construction of the proposed pipeline, because there was already an existing 26 inch gas pipeline across the farm running parallel and adjacent to the proposed new right of way. The law is well settled that the defendant had the burden of establishing that the expropriation would decrease the market value of his farm. See City of New Orleans v. Giraud, supra, and the cases cited therein. The defendant here clearly did not sustain this burden.
On further consideration we are of the opinion this case should not be remanded. Defendant's counsel was obviously aware of the issue of diminution in market value and attempted to prove his case by the testimony of defendant, but this evidence did not suffice to carry the burden of proof imposed upon him. The testimony of plaintiff's witness, Gilbert H. Vidrine, a well qualified real estate agent, that because of the existing pipeline there would be no diminution in market value, caused by a new pipeline is reasonable, particularly in view of the fact that the land with which we are concerned here is best suited for rice and pasture and under the terms of the expropriation the defendant can continue to use the surface for these purposes. Defendant offered no contradictory expert opinion testimony. Under these circumstances, justice does not require that we remand the case in order to give the defendant another day in court to attempt to prove that the market value of his land had been lessened since the taking. This case is readily distinguishable from Texas Pipeline Company v. Barbe, 1956, 229 La. 191, 85 So.2d 260 in which the majority opinion held that a first high pressure gasoline pipeline would obviously affect the market value of defendant's property which was useful for industrial sites. The court there decided that the trial judge had not used the proper method for computing these severance damages and therefore remanded the case with specific instructions that evidence be allowed to show the market value of each tract immediately before and immediately after the expropriation.
In argument on rehearing the defendant herein has not asked that we adhere to our original opinion remanding his case. We can interpret this as an indication he does not desire a remand. For this reason, as well as the reasons set out above, our original opinion is changed so as to delete therefrom the order remanding this case to the lower court.
For the reasons assigned, our original opinion herein is amended so as to allow the defendant damages in the sum of $290 for the cost of releveling his 29 acre rice field, in addition to the sum of $490 which was awarded to the defendant as compensation for the value of the rights expropriated and damages in the sum of $200 for the cost of relocating his relief pump, making a total of $980. The remainder of defendant's demands for compensation and damages are denied. Our order remanding this case to the lower court is recalled and *837 cancelled. All costs in the lower court, as well as the costs of this appeal, are assessed against the plaintiff.
Amended and affirmed.
HOOD, J., concurs in the decree.
TATE, Judge (concurring in part, dissenting in part).
The writer concurs with the majority opinion on rehearing insofar as it properly allows the landowner to recover some of the damages caused him by the taking, including the necessity of re-leveling his rice field. But with due deference to the majority opinions of this court, I must respectfully and firmly dissent insofar as the judgments of this court in this and the companion suit (Texas Gas Transmission Corporation v. Fontenot, 133 So.2d 841, rendered this day) do not allow the landowners to recover the full severance and other damages which the record plainly shows were caused them by the taking.
My dissent is based chiefly upon the majority's failure to allow any compensation whatsoever for the severance damages to the defendant's lands caused by the laying of a second pipe line across his field. The majority apparently does not believe that the present record shows that a second pipe line will cause such lowered market value of the remainder of the tract, a belief not only entirely unsupported by practical observation of the world around us (we cannot be blind as judges to what we know as men) but also by the present record, as the writer will show.
This finding is said to be based upon the testimony of G. H. Vidrine, the only expert realtor testifying. It is instructive, therefore, to quote what this well-qualified expert actually said in this regard, Tr. 66-67:
"Q. In your opinion, what is the highest and best use of Mr. Fuselier's property? A. Rice and cattle.
"Q. Would the location of the proposed pipe line have any material affect on the value of Mr. Fuselier's property? I'm not speaking about the productivity now, I'm speaking about the value? A. Without taking into consideration of any existing Pipeline before?
"Q. Well considering the existing pipeline, yes, you'd have to consider it in its present state. A. Not very much, no.
"Q. Well, will it have any effect, you think on the value of the property? A. It's have an effect on the productivity.

"Q. I'm speaking of value as opposed to productivity? A. Notconsidering the other line that are there, it wouldn't make much difference, it's affected already."
Of course, any effect on the "productivity" of this agricultural land will obviously have an effect on its "value". It is as if counsel had asked, "Not counting the true damage caused the land by the insertion of a fresh pipe line across it [namely, the loss of productivity], will the laying of this other pipe line cause any damage?" To which the legally meaningless answer of course is, "No". (Apparently what was referred to by this question and answer was, in addition to loss of productivity, additional loss of market value because of fear of explosion, etc.)
The loss of productivity of the field as a whole is proved without contradiction by the record. In the strip taken (and in the almost one acre additional of temporary right of way used for working space in the construction of the pipe line on the permanent right of way taken; for use of which strip the majority allows absolutely no compensation), due to the disturbance of the top soil and the poisoning of the soil by the application of the heated insulating *838 coal-tar on the pipe line as it is laid, the productivity is decreased for a period of years. The landowners' witnesses, including an expert agriculturalist, estimated the loss of productivity as much as 90% during the first year and gradually decreasing over up to ten years; the plaintiff's rebuttal witnesses admitted such damage would result, estimating that the loss of productivity would be only (!) 50% the first year and that, with the heavy use of fertilizers, the yield on the affected land would be restored to normal in about four years.
The majority did not award even one cent to the defendant landowner for this undoubted damage of loss of productivity which the evidence proves without contradiction he will sustain. Nor would the majority allow one cent for severance damages to the defendant for the depletion in value of his remaining property by having a fresh pipe line cut across his field, on the apparent ground that such additional severance damage was not proved by the record.
It is, of course, obvious that a field with an additional and fresh pipe line cut through it, which under the undisputed evidence of the witnesses from both parties will cut the total productivity of the field, will have a lesser value than the same field would before the second fresh pipe line was cut through it causing the additional loss of productivity.
We must remember that the evidence shows that the defendant's field was used for the production of rice and that it could not be economically worked in smaller tracts, such as would be necessary if the pipe line right of way was fenced in. And if the pipe line right of way had been fenced, preventing access from one part of the field to the other, even the plaintiff's expert witnesses admits that the severance damage per acre of the remainder would be a substantial portion of the total value of the tract, since the separation of it into two fields would destroy the property's availability for its best and most profitable use of the growing of rice.
Since the pipe line right of way is not to be fenced, severance damages should not be allowed based on the field's loss of value for its best and most profitable use. But, on the other hand, since the reason such severance damages are not allowed is that the fields are still available for the growing of rice, we cannot close our eyes to the undisputed evidence in this record that, in the continued growing of rice during the next several years, the productivity of the field as a whole will be lessened because, on the pipe line strip across it, the yield will be substantially diminished.
(As the evidence shows, the expenses of cultivating this strip must be the same as if a full yield could be expected, because the economical advantages of growing rice in large fields result from the mechanized working of the entire field. That is, the strip in question must be sowed, cultivated, fertilized, poisoned and watered at the same expense, even though a very small yield can be expected from the strip itself, because the farmer cannot efficiently avoid putting the same time and expense on this small strip through the middle of his large tract as he does on the fertile portionhe cannot stop his tractor as he comes to the strip and start it again on the other side, etc.)
Under our constitution, the farmer must be allowed this proven damage caused by the taking, whether by way of severance damages as a loss of value of the strip as a whole or simply as damage caused by the expropriating authority through the taking; a damage which the trial court conservatively calculated at $1,341 in the present case. We must remember that these landowners' rights of ownership are being taken against their will and for the benefit and profit of other private persons. It may indeed be that these landowners must yield up their own lands for the benefits of the plaintiff's stockholders and customers; *839 but, if this is indeed the law, it is likewise the law that the defendant landowners must be compensated for the full damage caused them by the taking.
Under Article I, Section 2 of our Constitution, LSA, it is provided:
"* * * private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." (Italics mine).
LSA-Civil Code, Article 497 provides:
"No one can be deprived of his property unless for some purpose of public utility, and on consideration of an equitable and previous indemnity and in a manner previously prescribed by law.
"By an equitable indemnity, in this case, is understood not only a payment for the value of the thing of which the owner is deprived, but a remuneration for the damages which may be caused thereby." (Italics mine).
As was recently re-stated in State through Department of Highways v. Ragusa, 234 La. 51, 99 So.2d 20, 21.
"* * * the criterion to be applied in arriving at the basis for assessments of the `true value' of property in expropriation proceedings is the market value or the price which would be agreed upon at a voluntary sale between a willing seller and a willing purchaser, taking into consideration all available uses to which the land might be put as well as all factors which lead to a replacement of the loss caused by the taking. This means substantially that the owner is placed in as good a position pecuniarily as he would have been had his property not been taken. * * *" (Italics mine.)
The majority's conclusion that the landowner sustained no damage through the laying of the second pipe line across his field is totally unrealistic. In the present case, for instance, the farmer had just about restored the loss of productivity in his field caused by the laying of the first pipe line ten years earlier; the laying of a fresh pipe line will, under all the evidence, cause a further substantial loss of productivity for a substantial period of time. This proven loss of productivity in the field as a whole will cause damage to the landowner beyond the value of the strip actually taken.
In valuing the strip taken, the majority refused to heed the evidence that the peracre value of a strip across the field is greater than the per-acre value of the entire tract; it awarded such damages only on the basis of the value per acre of the entire tract. Yet, inconsistently, the majority refuses to consider the severance damages caused the tract as a whole by the taking of the strip for a right of way; the majority now says the landowner has received full compensation for the strip and that he cannot be allowed the loss in value of the tract as a whole caused him by the loss of productivity undoubtedly resulting from the taking.
With due respect to my brothers of the majority, they are ignoring the specific provision of our constitution, which says that a man's private property shall not be "taken or damaged" unless just compensation is paid him. La.Const., Art. I, Section 2; which compensation, our legislature has provided, includes "not only a payment for the value of the thing of which the owner is deprived, but a remuneration for the damages which may be caused thereby", LSA-C.C. Art. 497.
This substantial damage by reason of loss of productivity is undoubtedly showed by the present record. Whether it should be allowed directly as a pecuniary damage caused by the taking, or instead as severance damage resulting from the decreased value of the tract as a whole, is a *840 new question for the appellate courts. While undoubtedly the pipe line companies have been voluntarily paying out of court such damages caused by the taking, apparently never until now was their liability in this regard questioned. At the very least, if this court does not allow such an award, we should, as did the original majority opinion, remand the case for further proof of the effect of this undoubted loss of productivity on the market value of the strip as a whole. Under similar circumstances, this is what was done by the Supreme Court in Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260.

II.
The majority also fell into error, it seems to me, by basing its valuation of the land taken only upon generalized estimates which were not based upon comparable sales, and by disregarding the only comparable sales in the record, sales to other pipe line companies.
The majority has determined that the value of the land taken was $200 per acre, based upon the generalized testimony of a very competent realtor, G. H. Vidrine, that the value of the farm land was $500 per acre (including minerals), but $200-250 for the surface rights only. See Tr. 77. (On rehearing, the majority properly disregarded the testimony of the other realtor testifying, since the evidence shows that the latter had been a real estate agent for only two years, during which time he had made only one salethat of land 12 miles away from the subject property, and that his testimony was based on only four alleged comparable sales during the ten years prior to the suit.)
Mr. Vidrine's testimony specifically was not based on comparable sales but only upon his expert opinion as to what land in such area should sell for. The majority completely disregards the only true comparable sales reflected by the record, sales to other pipe line companies, upon some notion that they could not be considered since made to other expropriating agencies!
The true general rule, however, is that "the measure of compensation to be awarded in expropriation cases is the market value of the propertythat is, a price which would be agreed upon at a voluntary sale between a willing seller and purchaser * * * and that sales of similar and comparable property within the vicinity offer the best guide in determining the market value to which the owner is entitled * *", State through Department of Highways v. Central Realty Investment Company, 238 La. 965, 117 So.2d 261, 263. Further, "sales to the expropriating authority made under the threat of expropriation are not the result of free bargaining between a willing seller and a willing buyer, and, while they can be considered in reaching the market value of property to be expropriated, are not controlling as comparable sales", State, Through Department of Highways v. McDuffie, 240 La. 378, 123 So.2d 93, 96. (Italics mine.)
In my opinion, the majority is obviously in error in attaching no weight whatsoever to the sales made to the other pipe line companies, especially since the expert testimony upon which the majority relies is only generalized opinion testimony, not based on comparable sales. The well settled rule, as above stated, is that comparable sales furnish the best guide to the value of property and that sales to expropriating agencies may be considered even though not controlling.
Thus, the record before us shows not only that another pipe line company had purchased five acres of land for $2,500, but it also shows that, five years before the present suit, a corporation other than the present plaintiff had paid a total of $26 per rod ($12 for the right of way and $14 for the severance damages), to lay a second *841 pipe line across comparable rice-pasture land in the neighborhood. See Tr. 203.
As this court stated recently in State through Department of Highways v. Carret, 130 So.2d 447, at page 449, "voluntary sales made by other property owners to the expropriating authority. * * * may be somewhat indicative of value, even if made under the threat of expropriation, since their valuations may result to some extent from voluntary agreement and sometimes bargaining between the landowners and the expropriating agency"at least "[i]n the absence of * * * any more comparable sales". While under threat of expropriation a landowner might well take less than the full value of the land, the valuation voluntarily accepted by a landowner from an expropriating agency will surely furnish a truer guide to the willing seller-value than will a generalized estimate of a hired expert, when such estimate is not based upon comparable sales by which the courts may evaluate objectively the soundness of the estimate.
In my opinion, therefore, the land owner should have been allowed at least $12 per rod for the right of way actually taken, plus severance damages, in view of this uncontradicted testimony as to the only other comparable sale.

III.
The trial court awarded the defendant landowner $4234. The majority of this court has cut the award to $980. The uncontradicted evidence shows that a landowner in the neighborhood had, for a similar second pipe line across comparable land, received $26 per rod in right of way and severance compensation from another pipe line company, by reason of his voluntary execution of a right of way, at which rate the present landowner should have received $3,367 for the 129.5 rod strip, about three and one-half times what the majority has awarded. The brief of counsel shows that the landowner was offered before suit almost double what the majority has awarded after litigation.
The purpose of these computations is to indicate the drastic devaluation by the majority of the generally accepted compensation due a landowner for the laying of a pipe line across that individual's private property. While the criss-crossing of our rich lands of South Louisiana by pipe lines for the benefit of customers in distant parts of the nation must perhaps be accepted as the price of national progress, constitutionally our landowners must also be fully compensated for the taking and damaging of their property by these private pipe line corporations, which are thus expanding their markets for their own profit. In my opinion, the majority's award ignores this mandate of the state constitution.
For the foregoing reasons, therefore, I respectfully dissent in the respects mentioned.