192 So.2d 646 (1966)
J. B. VEILLON, Plaintiff-Appellee,
v.
COLUMBIA GULF TRANSMISSION COMPANY, Defendant-Appellant.
No. 1861.
Court of Appeal of Louisiana, Third Circuit.
December 1, 1966.
Rehearing Denied December 21, 1966.
*647 Edwards & Edwards, by William Broadhurst, Crowley, for defendant-appellant.
Fusilier, Pucheu & Soileau, by J. W. Pucheu, Ville Platte, for plaintiff-appellee.
Before TATE, FRUGÉ, and HOOD, JJ.
*648 TATE, Judge.
The defendant (Columbia Gulf) constructed a high pressure 30" natural gas pipeline across the plaintiff Veillon's tract. Columbia Gulf did not secure a right of way deed from Veillon before doing so. Veillon accordingly sues Columbia Gulf for trespass damages. Alternatively, he prays for the value of a servitude appropriated for pipeline purposes and for severance damages thereby caused.
Columbia Gulf appeals the award of $5,540 trespass damages to the landowner. It contends that no trespass had occurred and urges that the award be reduced. The landowner Veillon answers the appeal praying for, additionally, the value of the land appropriated for the pipeline and for greater severance damages than allowed for the loss in value of the remainder of his tract caused by the illegal appropriation.
1. No trespass awardthe "St. Julien doctrine".
The trial court correctly held that Columbia Gulf's invasion of the plaintiff Veillon's land was not authorized by law.[1] However, not called to our trial brother's attention was a clearly defined line of jurisprudence which holds that a landowner waives his right to attack as legally unauthorized the use of his land appropriated for a public purpose by a party with power of eminent domain, when the landowner with full knowledge of the unauthorized taking expressly consents to it or silently acquiesces therein. A. K. Roy, Inc. v. Board of Com'rs. for Pontchartrain Levee District, 238 La. 926, 117 So.2d 60; Comment, ExpropriationA Survey of Louisiana Law, 18 La.L.Rev. 509, 533-36 (1958).
By reason of this "St. Julien doctrine" (so called after the parent case), the landowner cannot reclaim his property but is instead relegated to a claim for compensation for the value of the property taken and for the severance damages sustained by the remainder of his tract, both determined as of the date of the taking. A. K. Roy, Inc. v. Board of Com'rs of Pontchartrain Levee District, cited above; Maxfield v. Gulf States Utilities Co., 222 La. 987, 64 So.2d 243, followed, La.App. 1 Cir., 65 So.2d 615; Gumbel v. New Orleans Terminal Co., 186 La. 882, 173 So. 518; St. Julien v. Morgan's Louisiana & T. R. Co., 35 La.Ann. 924 (1883). See also many cases referred to in previously cited Comment at 18 La.L.Rev. 533-36.
The decisions note that the doctrine is founded on public policy and natural equity, to prevent one who by silence acquiesces in a taking for a public purpose from thereafter disrupting or making unduly burdensome the use for such a purpose.
Under this uniform jurisprudence, the unopposed appropriation for a public purpose is regarded as creating a servitude (limited to the nature and extent of use conferred by such mere occupancy, Consolidated Companies, Inc. v. Haas Land Co., 179 La. 19, 153 So. 6, Louisiana Power & Light Co. v. Dileo, La.App. 1 Cir., 79 So.2d 150, 159), with the landowner being relegated to the same measure of recovery as if the servitude had been lawfully appropriated. No trespass damages are recoverable, since for reasons of public policy the appropriation is regarded as not accomplished unlawfully but rather with the acquiescence of the landowner. Taylor v. New Orleans Terminal Co., 126 La. 420, 52 So. 562; St. Julien v. Morgan's Louisiana and Texas R. & Steamship Co., 39 La. Ann. 1063, 3 So. 280 (this is a sequel to the original St. Julien case). Thus, the continued use of the St. Julien servitude is not *649 regarded as a continuing trespass;[2] the right to compensation vests in the person who was owner at the time of the unopposed taking and does not inure to his successors in title unless expressly transferred to them by the owner; and neither the owner at the time of the unopposed taking nor his successors in title can interfere with the public use or claim rent or any continuing compensation for such use. Gumbel v. New Orleans Terminal Co., 197 La. 439, 1 So.2d 686; Taylor v. New Orleans Terminal Co., 126 La. 420, 52 So. 562.
The record reflects without contradiction that the landowner Veillon did not oppose the appropriation of his property. He did refuse the condemnor's initial offer of compensation. But when the company went ahead with its construction, by his own commendably frank testimony he did not object to the laying of the line until he filed this suit some weeks later, Tr. 92, even though he was on the construction scene daily.
The landowner Veillon contends, however, that he should not be regarded as having consented to the unlawful appropriation. He did not protest only because of his mistaken beliefuntil he consulted a lawyer after the takingthat the 1953 deed gave Columbia Gas the right to lay another pipeline.
Nevertheless, the St. Julien doctrine applies even though the landowner's lack of opposition is due to an error of law, see original St. Julien decision, 35 La.Ann. 924 (where the landowner stood by in 1879 uncertain as to whether an 1852 right of way deed conferred any rights upon the railroad company), or to an error of fact, see Maxfield v. Gulf States Utilities Co., La.App. 1 Cir., 65 So.2d 615 (the landowners did not protest construction of a utility line, for which they had refused to grant a servitude, until some years later when after a formal survey they learned of the utility's encroachment).
We must therefore hold that the trial court erred in awarding the plaintiff Veillon trespass damages for the laying of the pipeline across his land. As held by the cited authorities, Veillon is entitled instead to an award for the value of the servitude appropriated plus the severance damages, if any, caused to the remainder of his tract.
2. The award as if a lawful expropriation.
(a) For the servitude taken:
The landowner Veillon's tract is 256 acres in extent. It is used entirely as a cattle pasture. It is shown to be well-improved pasture land with a market value of $300 per acre according to the preponderant expert testimony. A realtor testifying for Columbia Gas opined a value of only $200 per acre; but the evidence shows that the sale upon which he relied did not concern comparable property.
Eight acres were appropriated by Columbia Gas for its pipeline servitude. The evidence reflects virtually without dispute that this acreage will be worthless for pasturage purposes for at least ten years.
Assuming trespass damages were allowable, the trial court had awarded the plaintiff damages of the rental value for ten years of the 8-acre servitude area, thus contemplating that the plaintiff would additionally be entitled to an award for the value of the servitude if and when lawfully expropriated. See footnote 2. However, *650 we have instead determined that the landowner is entitled only to the market value of the servitude taken as in an ordinary expropriation suit.
Columbia Gas laid its high-pressure natural gas pipeline some 50' distant from and parallel to another such high-pressure line it had constructed in 1953. The line ran approximately one mile across the Veillon tract, with a right of way width 66 feet wide. The right of way area included eight acres in all.
The evidence reflects that the topsoil surface of this entire 66' right of way area had been destroyed by the use of heavy equipment in the construction of the pipeline, as also by the displacement and spreading all over the surface area of the clay from the bottom soil of the deep (6') ditch dug for the pipeline. The substantially preponderating testimony of the landowner's experts is that the land is now worthless for use and will not become suitable for pasturage or any other reasonable agricultural use until its fertility is restored. An expert testified that this will require five years of intensive plowing, fertilizing and working over at an out of pocket expense of $50 per acre per year plus the value of the farmer's labor, i. e., at a total cost equaling the market value of the land.
Under similar circumstances we have awarded the landowner the full fee value of the land taken for the pipeline servitude, since its suitability for its practical uses has been completely destroyed and its market value so substantially decreased as to make the ravaged strip commercially worthless (a burden rather than an income producer). Texas Gas Transmission Corp. v. Fuselier, La.App. 3 Cir., 133 So.2d 828 (syllabi 2, 6). We feel the full fee value to be the appropriate measure of the value of the servitude under the evidence reflected by the present record.
Columbia Gas contends, however, that the award for the servitude area should be limited to 50% of its fee value, as in Columbia Gulf Transmission Co. v. Fontenot, La.App. 3 Cir., 187 So.2d 45, and Central Louisiana Electric Co. v. Fontenot, La.App. 3 Cir., 159 So.2d 738. In those cases, however, the testimony therein indicated a 50% depreciation to be an appropriate award, unlike the present case where the greatly preponderant expert testimony is to the effect that these particular construction operations rendered this land virtually worthless for the purposes for which suitable. Here, the condemnor's expert realtor regarded the strip as only 50% depreciated by the servitude only because of his admittedly non-expert opinion, Tr. 131-32, that the land could be brought back into condition for normal pasturage use within two years, Tr. 122-23, but this opinion is contrary to the great preponderance of the other expert testimony of the agriculturalists testifying for the landowner.
We therefore find that the landowner Veillon is entitled to an award for the servitude taken of $2,400, i. e., $300 per acre for the eight acres taken.
(b) Severance damages to the remainder of the tract:
As part of its trespass award, the trial court allowed the plaintiff landowner severance damages for the loss in value of 160 acres of his 256-acre tract caused by the presence of an additional high-pressure pipeline.
Columbia Gas, the present appellant, contends such additional severance damages are not allowable because the present is a second high-pressure line. It suggests that any loss in market value caused by fear of explosion, etc., had already been caused by the first line.[3] It points out that severance *651 damages for a second pipeline were not allowed in Texas Gas Transmission Corp. v. Fuselier, La.App. 3 Cir., 133 So. 2d 828.
Nevertheless, where the evidence shows that the additional pipeline causes additional loss in the market value of the remainder of the property left after the taking, then the landowner is of course entitled to an award for this additional diminution in market value in accord with the constitutional requirement that landowners be compensated for any damage caused by a taking for a public purpose. United Gas Pipe Line Company v. Nezat, La.App. 3 Cir., 160 So.2d 367, certiorari denied. For instance, in Fuselierrelied upon by the present appellant, we on original hearing remanded for the limiting purpose of establishing severance damages caused by the laying of the second pipeline, 133 So.2d 831, and on rehearing we disallowed them only because the matter had been at issue at the trial and a majority of this court regarded the landowner's skimpy evidence as insufficient proof of such damages, 133 So.2d 836.
In the present case, the condemnor's expert testified that he felt that the landowner's tract did not sustain any loss in market value for pasturage purposes by reason of the additional high-pressure pipeline servitude area crossing its entire north-south length. Contrariwise, both of the landowner's experts felt that the market value of this tract was decreased because of this additional line.
The landowner's experts conceded that the greatest loss in value is usually caused by the first high-pressure pipeline. These experts testified that nevertheless this additional pipeline would cause a decrease in the market value of the remainder of the pasture of 10% from its prior value of $300 (which value took into account the first pipeline).
In so testifying, the landowner's experts advanced strong and detailed reasons why this second pipeline would cause an additional decrease in market value of this tract as of the date of the taking because of the effect on a prospective purchaser of:
The slightly raised surface over the new north-south pipeline, which will have a levee-like effect of interfering with the natural east-west drainage of the entire tract until it subsides after a few years, and which will tend to and has caused bogginess hampering the most effective use of the pasture separated by the strip; the increased amount of surveillance, inspection, and traffic over the right-of-way areas caused by the presence of two lines instead of only one; the doubling in area of the strip across the pasture which can no longer be used for cattle sheds, trees, or roads.
The trial court concluded that the remainder of 160 acres of the plaintiff Veillon's 256-acre tract would sustain a 5% diminution in market value because of the presence of this additional pipeline. We find no error in this determination by the trial court, based upon its evaluation and acceptance of strong and detailed expert testimony so proving. Gulf States Utilities Co. v. Cormier, La.App. 3 Cir., 182 So.2d 176 (syllabus 12); Central Louisiana Electric Co. v. Fontenot, La.App. 3 Cir., 159 So.2d 738 (syllabus 5); Tennessee Gas Transmission Co. v. Primeaux, La.App. 1 Cir., 100 So.2d 917, certiorari denied.
We therefore find the plaintiff landowner to be entitled to severance damages for the loss in market value of 152 acres of his tract (the 160 acres affected, less the 8 acres taken for which the fee value has been awarded). This loss is computed at 5% of the value of the tract ($300 per acre, or $45,600 in all), for net severance damages of $2,280.
(c) Recapitulation:
The plaintiff Veillon's total award for the appropriation will therefore be $2,400 for the servitude taken plus $2,280 for the *652 severance damages caused his tract, for a total award of $4,680.
Decree.
For the foregoing reasons, having found that the defendant acquired a servitude 66 in width across the plaintiff Veillon's tract through its unopposed appropriation of it, we reduce the trial court award from $5,540 to $4,680 (Four Thousand Six Hundred Eighty and No/100 Dollars), together with costs and legal interest from date of judicial demand. As thus amended, the judgment is affirmed. The defendant-appellant is to pay the costs of this appeal.
Amended and affirmed.
HOOD, Judge (concurring).
The issues presented in this action are almost identical with those which were presented in Gray v. State et al., La.App., 191 So.2d 802, which case was decided by a majority of this court a few days ago. The views expressed in this case as to the applicable rule of law, however, are contrary to the views which were expressed by the majority in the Gray case, whereas they are in complete accord with the views which were expressed in the dissenting opinion in that case.
Actually, the facts in this suit are much more favorable to the position taken by plaintiff than were the facts in the Gray case. In this case, for instance, the defendant expropriating authority, Columbia Gulf Transmission Company, attempted to negotiate with the plaintiff landowner before the taking but it failed to arrive at any agreement with him. The company, nevertheless, proceeded to take the land without a court order or any other color of authority. In the Gray case, on the other hand, the expropriating authority, the State of Louisiana, instituted formal expropriation proceedings against the landowners, and pursuant to amended pleadings filed in that action, the State obtained an amended order of expropriation from a court of proper jurisdiction granting to it a servitude on the property which was used. The actions of the expropriating authority in the Gray case were in complete accord with the authority and right granted to it by that court order.
In spite of the careful precautions taken by the State in the Gray case, the majority in that suit held that the State was liable in damages for illegal trespass, while in the instant suit, where no attempt was made to expropriate or to obtain judicial authority to take the land, we apply the established law as set out in Article 1, Section 2, of the Louisiana Constitution, and in Angelle v. State, 212 La. 1069, 34 So.2d 321; Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354; Aleman v. Sewerage and Water Board of New Orleans, 196 La. 428, 199 So. 380; Hebert v. T. L. James and Company, 72 So.2d 754 (La.App. 1st Cir. 1954); Cousin v. Hornsby, 87 So. 2d 157 (La.App. 1st Cir. 1956); Schneidau v. Louisiana Highway Commission, 206 La. 754, 20 So.2d 14; and other cases. The rule being applied here is set out in the above cited authorities, although none of these cases were referred to in the majority opinion.
I, of course, did not agree with the conclusions which were reached by the majority in the Gray case. My views as to the law which should be applied in determining the issues which are presented here and which were presented in the Gray case are set out in the dissenting opinion of the Gray case and they are in accord with those expressed here.
I agree with my brothers that in a suit, such as this, which is predicated on Article 1, Section 2, of the Constitution, the measure of recoverable damages is the diminution of the market value of the property. I view the decision which is being rendered in this case as overruling the majority opinion in the Gray case.
For these reasons I concur in the opinion which is being rendered in this case.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] Columbia Gulf sought to build the pipeline in 1965 by virtue of a right to do so allegedly granted by a right of way deed executed in 1953. However, any right the deed may possibly have conferred to build an additional pipeline had prescribed in ten years. See Columbia Gulf Transmission Co. v. Fontenot, La.App. 3 Cir., 187 So.2d 455, certiorari denied, 249 La. ___, 190 So.2d 234.
[2] In the original St. Julien decision the court had noted that, if the entry had been unlawful instead of with the acquiescence of the landowner, then the payment of damages would not have the effect of making the appropriation legal; the company would remain liable to successive actions for the continuing trespass until the property was lawfully expropriated. 35 La.Ann. 926. See also Sigue v. Texas Gas Transmission Corp., La.App. 3 Cir., 154 So.2d 800, certiorari denied.
[3] The record also indicates that a minor portion of the plaintiff's tract was crossed by two small (6") natural gas lines of a local utility, but that any diminution in value caused by them was inconsequential.