405 So.2d 655 (1981)
Claude O. DUNLAP, Plaintiff-Appellee,
v.
RED RIVER WATERWAY COMMISSION, Defendant-Appellant.
No. 8405.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1981.
Rehearing Denied November 20, 1981.
*656 Cook, Yancey, King & Galloway, Charles G. Tutt, Shreveport, for defendant-appellant.
Michael F. Kelly, Marksville, for defendant-appellee.
Knoll & Knoll, Kerry L. Spruill, Marksville, for plaintiff-appellee.
Before CUTRER, STOKER and LABORDE, JJ.
CUTRER, Judge.
This appeal involves the respective rights of the parties to a sale of immovable property subject to a servitude. Claude O. Dunlap (Dunlap) was the original owner of the tract of land upon which he granted a servitude to defendant, Red River Waterway Commission. Webster Paul Guilliot (Guilliot) subsequently purchased the property burdened by the servitude. Dunlap filed this suit against Red River Waterway Commission (Red River), seeking payment for land destroyed pursuant to use of the servitude. Payment had been made by Red River to the subsequent purchaser and record owner of the land, Guilliot.
The trial court granted judgment in favor of Dunlap in the amount of $4,715.00, the value of the land used by Red River. It dismissed Red River's third party demand against Guilliot, which sought restitution of the amount paid to Guilliot in error. The trial court also dismissed Guilliot's third party demand against Dunlap. Red River and Guilliot appealed.
The issues on appeal are:
(1) Whether the servitude grant between Dunlap and Red River creates rights and obligations which "run with the land;"
(2) Whether the right to receive payment for the servitude remains in Dunlap or does such right to payment run with the land vesting such right in a subsequent purchaser, Guilliot;
(3) If Dunlap obtains judgment against Red River, the issue arises as to whether Red River may recover the payment it made to Guilliot; and
(4) If Red River is allowed to recover from Guilliot, we must determine whether Guilliot has any recourse against Dunlap for the price of the land destroyed due to the use of the servitude.

FACTS
On September 13, 1968, Dunlap purchased property from his father, which contains the tract in question. On October 30, 1975, Dunlap granted to Red River a servitude affecting 10.5 acres which abutted the Red River. The servitude was granted in perpetuity to Red River, its successors and assigns. Red River was in the process of constructing revetment works which construction was known as the "Red River Waterway Project." The servitude grant *657 gave Red River the authority to generally perform the work necessary for the construction and continued maintenance of the revetment works. As to payment for the servitude, the transfer contains the following provision:
"In consideration for the granting of this servitude, GRANTEE agrees, binds and obligates itself to pay GRANTOR at the rate of Five Hundred Seventy-Five and No/100 ($575.00) Dollars for each acre of land actually destroyed as determined by cross-sections taken after the work has been completed and compared with cross-sections taken immediately before the work commenced, the consideration to be due and payable as soon as the amount due can be determined."
This servitude was filed into the public record on November 3, 1975.
On July 16, 1976, Dunlap sold his land, including that subject to the servitude he granted Red River, to his brother, Marion Dunlap. The sale was by cash deed and made no mention of the servitude previously granted to Red River. Within a year, March 16, 1977, Marion Dunlap sold to Guilliot, by cash deed, 28 of the 40 acres he had acquired from Claude. Included within this 28 acres were the 10.5 acres subject to the servitude granted by Claude Dunlap. This deed made no mention of the prior servitude. Guilliot had purchased the property in question after having had a title examination made of the property.
Dunlap contends that the grant of the servitude was a contract between him and Red River creating a personal right for Dunlap to be paid the amount agreed upon. Red River, as does Guilliot, urges that the right, to receive payment for the land used, is one which passes with immovable property once sold; therefore, payment to Guilliot was proper.

WHETHER THE SERVITUDE "RUNS WITH THE LAND"
The resolution of this first issue is well established by the provisions of the Civil Code and jurisprudence.
LSA-C.C. art. 2012 provides, in part, as follows:
"Real obligations are created in three ways:

* * * * * *
(2) By alienating to one person the immovable property, and to another, some real right to be exercised upon it.

* * * * * *
"All these contracts give rise to obligations purely real on the part of those who acquire the land, under whatever species of title they possess it; ...."
This article further provides that a sale of the property, subject to the right of use, is an example of such a real obligation created under # (2) above.
LSA-C.C. art. 2015 declares, in part:
"Not only servitudes, but leases and all other rights, which the owner had imposed on his land before the alienation of the soil, form real obligations which accompany it in the hands of the person who acquires it, although he have made no stipulation on the subject, or they be not mentioned in the act of transfer....." (Emphasis ours.)
Under these code provisions, the servitude created herein, is a real obligation which burdens the land and thus travels with the land into the hands of subsequent purchasers. In the case at hand, the real rights granted by Dunlap to Red River followed the land into the hands of the subsequent owner, Guilliot.

PAYMENT TO DUNLAP OR GUILLIOT?
Having come to such conclusion, we must next determine whether the right to payment also travels with the land or does such remain with the original grantor, Dunlap. A review of the jurisprudence reflects that such right is personal to and remains with Dunlap.
In the early case of Taylor v. New Orleans Terminal Co., 126 La. 420, 52 So. 562 (La.1910), the plaintiff purchased land which was subject to a right of use of a railroad tacitly granted by plaintiff's predecessor in title. The defendant then exercised *658 its right of use by constructing a switch track. The plaintiff sued seeking remuneration for the land appropriated and other general damages. The court appropriately delineated the dichotomy between real rights and real obligations which burden the land and pass with it to successive purchasers, and the personal right of the original vendor to claim remuneration for land appropriated or damaged which does not pass with the sale of the land, except by express subrogation as follows:
"By defendant's appropriation with the tacit consent of the owner at the time, the right of the strip of land passed from the owner to the appropriator-the right became segregated from the property, and the owner became a creditor for the value of the proeprty taken.

"The right was personal. The owner at the time had a claim personally for the amount.

"The purchaser by the act of purchase does not become invested with a right to the value of the property taken unless the right is transferred with the property." (Emphasis added.)
In Veillon v. Columbia Gulf Transmission Company, 192 So.2d 646 (La.App.3rd Cir. 1966), writ den., 195 So.2d 143, 250 La. 256 (1967), the court was faced with the issue of whether compensation is a personal right or whether it attaches to the land and passes to subsequent purchasers. The defendant had acquired a pipeline servitude across plaintiff's land by tacit recognition (St. Julien Doctrine). In the discussion of the owner's personal right to compensation, the court stated as follows:
"... the right to compensation vests in the person who was owner at the time of the unopposed taking and does not inure to his successors in title unless expressly transferred to them by the owner; and neither the owner at the time of the unopposed taking nor his successors in title can interfere with the public use or claim rent or any continuing compensation for such use. ...." 192 So.2d 646, at 649.
The fact that the servitude in Veillon v. Columbia Gulf Transmission Company, supra, was acquired by tacit recognition instead of by contract does not alter the fact that the right to payment remains with the owner who granted the servitude and does not inure to the benefit of his successors. Thus, from the foregoing, the right to claim compensation is a personal right of the owner of the land at the time the servitude was granted. This right does not pass with the land by its subsequent conveyance unless, of course, there has been an express subrogation or transfer of this right from the owner to his vendee.
In the case at hand, the right to demand compensation is the personal right of Dunlap. The right never passed, by sale of the land, to Guilliot; therefore, Dunlap is the only person entitled to collect from defendant, Red River, for the use of the servitude granted. The portion of the judgment of the trial court in favor of Dunlap for $4,715.00 against Red River shall be affirmed.

RED RIVER'S RIGHT TO RECOVER AGAINST GUILLIOT
Guilliot's argument to Red River's third party demand against him raises the question of whether the instrument granting the servitude was properly recorded, since no plat was filed with the instrument.
LSA-R.S. 9:2726 provides, in part, as follows:
"A. Each person obtaining a servitude or right of way across private property where the servitude or right of way is obtained for the installation of a facility, or facilities, shall attach to the servitude or right of way agreement a plat, sketch or aerial photograph showing the approximate location of the servitude or right of way and the instrument and plat, sketch or aerial photograph shall be recorded in the conveyance records of the parish in which the private property is situated.

"B. `Person' as used in this section shall include natural persons, municipalities and parishes and other political subdivisions and agencies and departments *659 thereof, and persons, companies or corporations operating private or public pipelines or private or public utilities.

"C. `Facilities' as used in this section include waterways and drainage canals and underground, surface and overhead pipelines, sewerage lines, utility lines and electric power lines.

* * * * * *
"E. Failure to record the instrument and plat, sketch or aerial photograph herein required shall render the servitude or right of way agreement ineffective except as between grantor and grantee, their heirs, successors and assigns."
It is to be noted that the recordation requirements of LSA-R.S. 9:2726 do not apply between grantor and grantee, their heirs, successors and assigns. Guilliot was clearly a successor of Dunlap by the purchase of the property in question. This argument of Guilliot is without merit.
Guilliot further contends that Red River should be denied recovery against him in its third party demand. He argues that the release, signed upon payment for the land used in the project, extended the servitude previously granted by Dunlap.
The perpetual servitude granted by Dunlap provides, in pertinent part, as follows:
"Shall have and enjoy the right and privilege of entering and going upon the property hereinabove described; of bringing and using thereon such tools, machinery, equipment and vehicles as they shall consider necessary; of clearing grading and sloping the said property; of excavating and depositing thereon or removing therefrom, in such quantities as they shall see fit oil, sand, shell, clay and gravel; of depositing thereon stone, concrete, riprap and other materials for the construction of the revetment works, and Grantor hereby grants unto Grantee the right of perpetually maintaining such works thereafter."
Upon payment by Red River, Guilliot signed a release which contains the following language:
"... Further, appearer grants unto the Red River Waterway District, its successors and assigns, a perpetual servitude over the above described property for the future development and maintenance of the Red River Waterway Project." (Emphasis added.)
Guilliot contends the emphasized language broadened the scope of the original servitude granted to Red River by Dunlap.
We disagree with Guilliot's interpretation of this release. The original servitude grant was perpetual and very broad in its scope. The release does not grant any additional servitude nor does it authorize any additional use of the property. We find this argument to be without merit.
Red River is entitled to judgment against Guilliot for the sum paid to him. LSA-C.C. art. 2301 and art. 2302.[1] The portion of the trial court's judgment denying Red River's third party demand against Guilliot shall be reversed.

GUILLIOT'S RIGHT TO RECOVER FROM DUNLAP
Guilliot contends that this was a non-apparent servitude of which he was unaware and wasn't put on notice; thus, his third party demand against Dunlap should be recognized and judgment rendered accordingly.
Guilliot cites the case of Richmond v. Zapata Development Corp., 350 So.2d 875 (La.1977), in support of his position. Richmond had purchased 640 acres without any title examination or inspection of the premises. Richmond later discovered that oil and gas was being produced from the property under a lease executed and recorded in 1930. Richmond sued his vendor for damages. The court cited the general rule that:

*660 "Because the registry laws are intended only as notice to third parties and have no application whatever between parties to a contract, a vendee is under no obligation to search the record in order to ascertain what his vendor has sold and what it has not, and the vendee is entitled, as between himself and his vendor, to rely upon his deed as written ...."
The court then recognized the long-standing exception to the above rule when it stated as follows:
"An exception to the rule is recognized, however, regarding an alleged eviction resulting from the existence of an apparent servitude on the property...."

* * * * * *
"Louisiana courts also have adopted the view that a vendor does not warrant the property conveyed as free from apparent servitudes. Lallande v. Wentz & Pochelu, 18 La.Ann. 289 (1866); James v. Buchert, 144 So.2d 435 (La.App. 4th Cir. 1962). Cf. Collins v. Slocum, 317 So.2d 672 (La.App. 3rd Cir. 1975)...."
The rules enunciated in Richmond are inapplicable to this case.
In the case at hand, Guilliot was a third person as far as Claude Dunlap was concerned. Guilliot purchased the property from Marion Dunlap. Claude Dunlap was not the vendor of Guilliot. Where a recorded instrument has language that fairly puts a third person on inquiry as to the title and he does not avail himself of the means and facilities at hand to obtain knowledge of the true facts, he is considered as having purchased the property at his own risk and peril. Judice-Henry-May Agcy., Inc. v. Franklin, 376 So.2d 991 (La.App. 1st Cir. 1979), writ den., 381 So.2d 508 (La.1980). Furthermore, Guilliot stated that he had the title to the property examined. Guilliot, through his examiner, had notice of the existence of the servitude. As such, Guilliot is in no position to recover any damages from Claude Dunlap. The trial court correctly dismissed the third party demand of Guilliot against Dunlap.
For the reasons assigned, the judgment of the trial court is reversed insofar as it dismissed the third party demand of Red River against Guilliot and judgment on this third party demand shall be rendered in favor of Red River and against Guilliot in the amount of $4,715.00 plus legal interest from the date of demand until paid. In all other respects the judgment is affirmed. The costs of this appeal are assessed one-half to Red River and one-half to Guilliot.
REVERSED IN PART; AFFIRMED IN PART, AND RENDERED.
NOTES
[1] LSA-C.C. art. 2301 states:

"He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it."
LSA-C.C. art. 2302 states:
"He who has paid through mistake, believing himself a debtor, may reclaim what he had paid."